OPINION {¶ 1} Appellant, Susan Coats, Administrator of the Estate of Lieutenant Brandon Ratliff, deceased ("appellant"), filed this appeal seeking reversal of a decision by the Franklin County Court of Common Pleas granting summary judgment in favor of appellee, City of Columbus ("appellee" or "the City"). For the reasons that follow, we affirm the trial court's decision.
 {¶ 2} Brandon Ratliff ("Brandon") was employed by the Columbus Health Department starting in 1995, as a seasonal employee while still in high school. In 2001, *Page 2 
Brandon started working full-time for the Health Department as a Disease Intervention Specialist. At some point, Brandon approached Debbie Coleman, his manager at the Health Department, and told her he was experiencing financial problems and needed a job that would pay him more money. The two discussed a Health Education Program Planner position that would be available as part of a grant program that was funded for the period from October 1, 2002 through September 30, 2003. Brandon applied for and was ultimately offered the position. Appropriate personnel action forms were completed, and the only action remaining to be taken was what was known as the "civil service walkthrough," which entailed having Brandon sign some forms and have his picture taken.
 {¶ 3} The week before Brandon was to start in his new position, he received orders to report for military duty as part of the Army Reserves. Brandon was deployed to Afghanistan, where he served in a medical unit until he returned to Columbus in June of 2003. Brandon returned to work at the Health Department in September of 2003.
 {¶ 4} While Brandon was deployed in Afghanistan, Larry Thomas, Human Resources Director for the Health Department, determined that since Brandon had not completed the process of taking his new position, there was no requirement that the position be held for him pending his return from military service. Instead, the position was given to Linda Norris, a Health Education Program Planner in a different program, who was about to be laid off from her position due to budget constraints. Ms. Norris questioned her placement in that position because she was aware the position had been offered to Brandon before he left for military service, but was told that Brandon had not signed the papers necessary to actually take the position. *Page 3 
 {¶ 5} Thus, upon his return from military service, Brandon returned not to the position he had been about to start, but to his old job as a Disease Intervention Specialist. Brandon was working in a work area in which he had no computer and no other work equipment other than a shared telephone, which had not been the case before he was deployed to Afghanistan. Brandon expressed to some of his co-workers that he felt hurt by this situation, and like he had been demoted for some reason.
 {¶ 6} In February of 2004, Brandon went to meet with Thomas Horan, Assistant Commissioner of the Health Department, to express his feelings about the way he had been treated upon his return from Afghanistan. Mr. Horan told Brandon he would look into the situation to see if there was anything that could be done, and that this process would take a couple of weeks. Mr. Horan then directed Larry Thomas to investigate what had happened and to see if anything needed to be done. Mr. Horan also consulted with Alan Varhus of the City Attorney's office regarding the issue.
 {¶ 7} On March 5, 2004, Mr. Horan met with Brandon again. Mr. Horan explained that based on the review that had been conducted, he believed the City had taken all legal steps it was required to take when Brandon returned to work. Mr. Horan offered to hold further discussions regarding the issue, but Brandon ultimately informed him that someone representing him would contact the City for any further discussions.
 {¶ 8} On March 15, 2004, the Columbus Dispatch published an article detailing Brandon's story. The story was seen by a number of City officials, including Mr. Horan, Dr. Teresa Long of the Health Department, and Mayor Michael Coleman. Mayor Coleman's Chief of Staff, Michael Schwarzwalder, contacted Dr. Long and expressed Mayor Coleman's wishes that Brandon receive the promotion he had been promised or a *Page 4 
comparable job or, in the lack of an available comparable job, that Brandon at least be given the additional salary he would have received with the promotion. Dr. Long then began to take steps to follow the Mayor's wishes.
 {¶ 9} Unfortunately, the efforts undertaken by City officials on Brandon's behalf were not communicated to him. On March 16, 2004, Brandon visited the office of Health Department's Employee Assistance Program for counseling, where he expressed the mental and emotional problems he was experiencing as a result of the situation. On March 18, 2004, Brandon shot and killed himself.
 {¶ 10} Appellant, Brandon's mother and the administrator of his estate, filed this action alleging two causes of action: one a survivorship action seeking recovery for intentional infliction of emotional distress, and the other a wrongful death claim. The trial court ultimately granted summary judgment to appellee, and appellant filed this appeal alleging the following as the sole assignment of error:
 THE TRIAL COURT ERRED TO THE SUBSTANTIAL PREJUDICE OF PLAINTIFF/APPELLEE (sic) IN GRANTING DEFENDANT/APPELLEE'S BECAUSE (sic) REASONABLE MINDS COULD DIFFER AS TO WHETHER DEFENDANT/APPELLEE ACTED WANTONLY OR RECKLESSLY DIRECTLY AND PROXIMATELY CAUSING INJURY AND DEATH TO LIETENANT (sic) BRANDON RATLIFF.
 {¶ 11} We review the trial court's grant of summary judgment de novo.Coventry Twp. v. Ecker (1995), 101 Ohio App.3d 38, 654 N.E.2d 1327. Summary judgment is proper only when the party moving for summary judgment demonstrates: (1) no genuine issue of material fact exists; (2) the moving party is entitled to judgment as a matter of law; and (3) reasonable minds could come to but one conclusion, and that conclusion is *Page 5 
adverse to the party against whom the motion for summary judgment is made, when the evidence is construed in a light most favorable to the nonmoving party. Civ.R. 56(C); State ex rel. Grady v. State Emp. Rels.Bd. (1997), 78 Ohio St.3d 181, 183, 677 N.E.2d 343.
 {¶ 12} The trial court concluded that appellee was entitled to judgment as a matter of law by application of the immunity granted to political subdivisions by R.C. Chapter 2744. In reviewing a claim of political subdivision immunity, R.C. Chapter 2744 sets forth a three-tiered analysis. Cater v. Cleveland (1998), 83 Ohio St.3d 24,697 N.E.2d 610. First, R.C. 2744.02(A)(1) sets forth the general rule that "a political subdivision is not liable in damages in a civil action for injury, death, or loss to person or property allegedly caused by any act or omission of the political subdivision or an employee of the political subdivision in connection with a governmental or proprietary function." Next, it is necessary to determine whether any of the exceptions to this general rule listed in R.C. 2744.02(B)(1) through (5) are applicable. Finally, if it is determined that one of the exceptions might apply, the political subdivision may assert one of the affirmative defenses set forth in R.C. 2744.03(A). See Colbert v. Cleveland (2003),99 Ohio St.3d 215, 2003-Ohio-3319, 790 N.E.2d 781.
 {¶ 13} In this case, there is no question that appellee is a political subdivision entitled to the general rule of immunity. Therefore, the issue is whether any of the exceptions to immunity set forth in R.C.2744.02(B)(1) through (5) would apply to appellant's claims. Initially, we note that at the trial court, there was some argument about whether appellee violated a statutory duty under the Uniformed Service Employment and Reemployment Rights Act ("USERRA"). The trial court concluded that *Page 6 
jurisdiction to hear USERRA claims is vested solely in the Federal courts, and the statute could therefore not be used as the basis for appellant's claims. In her appellate brief, appellant specifically stated that she is not claiming any violation of USERRA, the collective bargaining agreement covering City Health Department employees, or the City's Management Compensation Plan. Thus, it is not necessary for us to consider that portion of the trial court's decision.
 {¶ 14} Appellant's survivorship and wrongful death claims allege the intentional infliction of emotional distress. Ohio courts have traditionally and consistently held that since R.C. 2744.02 includes no provisions excepting intentional torts from the general rule of immunity, political subdivisions are immune from intentional tort claims. Featherstone v. City of Columbus, Franklin App. No. 06-89,2006-Ohio-3150, citing Wilson v. Stark Cty. Dept. of Hum. Sers. (1994),70 Ohio St.3d 450, 1994-Ohio-394, 639 N.E.2d 105; Hubbard v. Canton CitySch. Bd. Of Edn. (2002), 97 Ohio St.3d 451, 2002-Ohio-6718,780 N.E.2d 543.
 {¶ 15} Appellant argues that the cases applying political subdivision immunity to intentional tort claims are distinguishable because those cases involved claims that were outside the employer-employee context. R.C. 2744.09 does establish an exception to immunity for claims by an employee of a political subdivision arising out of the employee relationship between the employee and the political subdivision. However, Ohio courts have generally held that intentional tort claims, by definition, cannot arise out the employee relationship because such intentional acts necessarily occur outside the scope of the employee relationship. See Brady v. Safety Kleen Corp. (1991), *Page 7 61 Ohio St.3d 624, 576 N.E.2d 722; Ellithorp v. Barberton City Sch. Dist. Bd. ofEdn. (Jul. 9, 1997), Summit App. No. 18029.
 {¶ 16} Appellant argues that the exception to political subdivision immunity set forth in R.C. 2744.02(B)(4) should apply here. Prior to April 9, 2003, that section specified that political subdivisions could be liable for negligence occurring on grounds or buildings used in conjunction with a governmental function. In Hubbard, supra, the Ohio Supreme Court held that this language was not limited to injuries suffered as a result of physical defects within the property.Hubbard, at syllabus.
 {¶ 17} We reiterate that R.C. 2744.02(B) speaks solely in terms of negligence, a claim appellant has not made. Even if the exception were not limited to negligence claims, the General Assembly amended R.C.2744.02(B)(4) effective April 9, 2003 to make it clear that the exception applies only to cases where the injuries resulted from physical defects in the property. Appellant argues that in this case, Brandon's injuries resulted from a course of conduct that began when he left for military service in October of 2002, and that the prior version of R.C. 2744.02(B)(4) and, by extension, the Ohio Supreme Court's decision in Hubbard, applies. However, it is clear that Brandon did not suffer any injury until after he returned to work in September of 2003. Therefore, the amended version of R.C. 2744.02(B)(4) would apply, and since appellant's claims were not based on injury resulting from a physical defect in appellee's property, the exception would not apply even if negligence had been raised.
 {¶ 18} Appellant also argues that appellee's immunity should be stripped away because appellant acted in a wanton or reckless manner in its dealings with Brandon. *Page 8 
Appellant argues that R.C. 2744.03(A)(5) would apply in this situation. R.C. 2744.03(A)(5) provides that:
 The political subdivision is immune from liability if the injury, death, or loss to person or property resulted from the exercise of judgment or discretion in determining whether to acquire, or how to use, equipment, supplies, materials, personnel, facilities, and other resources unless the judgment or discretion was exercised with malicious purpose, in bad faith, or in a wanton or reckless manner.
 {¶ 19} As we noted in Hiles v. Franklin Cty. Bd. of Commrs., Franklin App. No. 05AP-253, 2006-Ohio-16, R.C. 2744.03 does not create a basis for liability, but rather provides immunities and defenses to liability.Hiles, at ¶ 35. Under the framework set forth in Cater, supra, it is only necessary to consider whether one of the R.C. 2744.03 defenses applies if it is first determined that one of the exceptions to immunity in R.C. 2744.02(B)(1) through (5) applies, a hurdle appellant has not overcome in this case. Further, even if one of the exceptions to immunity did apply, the question of whether appellee acted in a reckless or wanton manner is only relevant to defeat a claim by the political subdivision that its action involved "the exercise of judgment or discretion in determining whether to acquire, or how to use, equipment, supplies, materials, personnel, facilities, and other resources" as provided in R.C. 2744.03(A)(5). The City has not asserted that as a defense.
 {¶ 20} Even if appellee did not have the benefit of the immunity provided to political subdivisions, appellee correctly argues that it would still be entitled to summary judgment, because Brandon's suicide was an intervening cause for which appellee cannot be held responsible. It is well-settled that "[t]he general rule is that suicide *Page 9 
constitutes an intervening force which breaks the line of causation stemming from the wrongful act, and, therefore, the wrongful act does not render the defendant civilly liable." Fischer v. Morales (1987),38 Ohio App.3d 110, 112, 526 N.E.2d 1098. An exception to this general rule exists where the intervening cause could have been reasonably foreseen or was a normal incident of the risk involved. Id. at 112.
 {¶ 21} In this case, Brandon's suicide could not have been reasonably foreseen, nor was it a normal incident of the risk involved. As we stated in Fischer, "It is common knowledge that virtually all human beings experience depression of varying degrees at various times of their lives. Depression is not an unusual emotional condition. Seldom does depression lead to suicide." Id. It is truly tragic that nobody with the City who was aware of the efforts being made on Brandon's behalf communicated to him that those efforts were being made, an act that may well have prevented the outcome that occurred. However, that failure cannot result in the imposition of legal liability against the City, because Brandon's act could not have been foreseen.
 {¶ 22} Consequently, we overrule appellant's assignment of error, and affirm the decision of the trial court.
Judgment affirmed.
 BROWN and WHITESIDE, JJ., concur.
WHITESIDE, J., retired of the Tenth Appellate District, assigned to active duty under authority of Section 6(C), Article IV, Ohio Constitution. *Page 1