[Cite as *Douglas v. Columbus City Schools Bd. of Edn.*, 2020-Ohio-1133.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

Liezl Douglas, :

     Plaintiff-Appellant, : No. 18AP-940
(C.P.C. No. 17CV-9353)

v. :

                           (ACCELERATED CALENDAR)

Columbus City Schools Board of :
Education et al.,
                                   :

     Defendants-Appellees. :

---

D E C I S I O N

Rendered on March 26, 2020

---

**On brief**: *Butler, Cincione & DiCuccio, Alphonse P. Cincione,* and *N. Gerald DiCuccio,* for appellant. **Argued**: *Alphonse P. Cincione.*

**On brief**: *Crabbe Brown & James, LLP,* and *John C. Albert,* for appellees. **Argued**: *John C. Albert.*

---

APPEAL from the Franklin County Court of Common Pleas

BROWN, J.

{¶ 1} This is an appeal by plaintiff-appellant, Liezl Douglas, from a decision and entry of the Franklin County Court of Common Pleas granting summary judgment in favor of defendants-appellees, Columbus City Schools Board of Education (individually "the school board"), Columbus City School District (individually "the school district") and Kirk Bardos (individually "Bardos"), and denying appellant's motion for summary judgment.

{¶ 2} On October 18, 2017, appellant filed a complaint against appellees. The complaint alleged that on May 24, 2011, appellant, while a student at Wedgewood Middle School, participated in a science class project led by Bardos, a teacher at the school.

According to the complaint, during the school's annual class rocket launch, one of the rockets went sideways and struck appellant on her right lower leg, causing burns and scarring.

{¶ 3} The complaint alleged that Bardos "breached diverse statutory law and common law dictates" by failing to exercise proper precaution in launching the rocket. (Compl. at ¶ 5.) The complaint further alleged that the school board and the school district "negligently permitted the rocket launch to go forward without providing a safe environment" for appellant, and in failing to provide "appropriate instruction on the proper handling of the rocket launch." (Compl. at ¶ 6.)

{¶ 4} On July 25, 2018, appellees filed a motion for summary judgment. Attached to the motion was the deposition of appellant. On August 20, 2018, appellant filed a response to appellees' motion for summary judgment. Attached to appellant's response was the deposition of Bardos. Also on that date, appellant filed a motion for summary judgment for strict liability based on the doctrine of res ipsa loquitur. On August 29, 2018, appellees filed a memorandum contra appellant's motion for summary judgment for strict liability.

{¶ 5} On November 7, 2018, the trial court filed a decision and entry granting summary judgment in favor of appellees and denying appellant's motion for summary judgment. In its decision, the trial court initially determined the school district was not a proper party to the action. With respect to the school board, the court found that appellant's allegations implicated the performance of a governmental function, and that none of the immunity exceptions under R.C. 2744.02(B) were applicable; the trial court further concluded, even if an exception applied, immunity would be restored under R.C. 2744.03(A)(5). As to Bardos, the court found "no allegation or evidence" that he acted maliciously, "wantonly, reckless[ly], or in bad faith," and that he was "entitled to immunity under R.C. 2744.03(A)(6) and 2744.07(A)(1)." (Decision at 8.)

{¶ 6} On appeal, appellant sets forth the following three assignments of error for this court's review:

> I. THE TRIAL COURT ERRORED IN AWARDING DEFENDANTS SUMMARY JUDGEMENT WHEN GENUINE ISSUES OF MATERIAL FACT ARE STILL IN EXISTENCE.

II. THE TRIAL COURT ERRORED IN AWARDING DEFENDANTS SUMMARY JUDGEMENT BY FAILING TO APPLY THE POLITICAL SUBDIVISION IMMUNITY STATUTE TO THE EXISTING FACTS OF THIS CASE.

III. THE TRIAL COURT ERRORED IN NOT GRANTING PLAINTIFF'S SUMMARY JUDGEMENT BECAUSE OF FAILING TO APPLY THE POLITICAL SUBDIVISION IMMUNITY STATUTE TO THE EXISTING FACTS OF THIS CASE.

{¶ 7} Appellant's assignments of error are interrelated and will be considered together. Under the first two assignments of error, appellant challenges the trial court's grant of summary judgment in favor of appellees, arguing: (1) there remain genuine issues of material fact, and (2) that the court erred in failing to apply the political subdivision immunity statute to the existing facts. Appellant further argues, under the third assignment of error, the trial court erred in failing to grant summary judgment in her favor based on application of the statutes governing political subdivision immunity to the facts of the case.

{¶ 8} Pursuant to Civ.R. 56(C), "summary judgment is proper if: (1) there is no genuine issue of material fact remaining to be litigated; (2) the moving party is entitled to judgment as a matter of law; and (3) it appears from the evidence that reasonable minds can come to but one conclusion, and viewing such evidence in favor of the non-moving party, that conclusion is adverse to the non-moving party." *Nichols v. Staybridge Suites*, 10th Dist. No. 08AP-773, 2009-Ohio-1381, ¶ 10, citing *Grafton v. Ohio Edison Co.*, 77 Ohio St.3d 102, 105 (1996). This court's review of a trial court's grant of summary judgment is "de novo." *Id.* Thus, "an appellate court 'applies the same standard as the trial court and conducts an independent review, without deference to the trial court's determination.' " *Id.*, quoting *In re Protest of Evans*, 10th Dist. No. 06AP-539, 2006-Ohio-4690, ¶ 8. Further, "[w]hether a political subdivision or its employee may invoke statutory immunity under R.C. Chapter 2744 generally presents a question of law." *Hoffman v. Gallia Cty. Sheriff's Office*, 4th Dist. No. 17CA2, 2017-Ohio-9192, ¶ 38.

{¶ 9} In granting summary judgment in favor of appellees, the trial court made the following factual findings. Bardos is a science teacher at Wedgewood Middle School (part of the school district), and appellant was a student in Bardos' sixth grade science class

during the 2010-2011 school year. On May 24, 2011, appellant "was injured during a rocket experiment conducted by Bardos with and for the class." (Decision at 2.)

{¶ 10} As part of the science class activities, "Bardos instructed students on the design process of a rocket." The project "was a part of the science curriculum and Bardos had instructed on this project for 23 years." Appellant worked along with three or four other students "to construct a rocket that Bardos would personally launch during a demonstration." Bardos "provided the engines and the launcher for the project." Bardos "inspected each rocket to ensure they met the requirements of the project," including provisions for "weight, number of fins, parachute, cone at the top, etc." The launch was to take place "in an open area of the parking lot of the school." Each of the student groups "set the rocket up on a launch pad and Bardos would launch the rocket." (Decision at 2.)

{¶ 11} On the date of the incident, the rocket constructed by appellant's group "was aimed straight up during the demonstration." Bardos "launched the rocket, which went up about 15 feet in the air before veering right towards a group of students, including [appellant], who were located 50-65 feet away." The rocket struck appellant in the ankle, and she was taken to the school nurse and "received immediate treatment." (Decision at 2.)

{¶ 12} Following the incident, "Bardos retrieved the rocket and inspected it to determine why it had veered to the right." Bardos "noticed one of the fins of the rocket had fallen off and the parachute did not open up." According to Bardos, "the fins were adhered securely as part of the rocket before the demonstration," and he "could not determine if the fin came off after the launch or if it came off when it hit the ground." (Decision at 2.)

{¶ 13} In its decision, the trial court initially determined, pursuant to the language of R.C. 3313.17, the proper party to this action was the school board rather than the school district.[1] The trial court then considered the issue of political subdivision immunity under R.C. Chapter 2744. The court held that the allegations by appellant "implicate the performance of a 'governmental function' because the conduct relates to the educational programming offered by Columbus City Schools through its agent, Bardos." (Decision at 6.) The trial court next found none of the exceptions to immunity under R.C. 2744.02(B)

---

[1] On appeal, appellant has not challenged the trial court's determination that the school district is not a proper party.

applicable, and appellant failed to meet her burden "to point to any immunity exception under R.C. 2744.02(B)." (Decision at 7.)

{¶ 14} The trial court further held, even assuming one of the immunity exceptions to be applicable, that R.C. 2744.03(A)(5) "would apply in this case to restore immunity" to the school board. Specifically, the court found that "Bardos was exercising his discretion in the use of equipment, supplies, and materials," and that the complaint "does not allege malicious, reckless, bad faith, or wanton conduct on the part of Bardos." (Decision at 7.) The trial court thus determined the school board was entitled to immunity under the facts of the case.

{¶ 15} With respect to Bardos, and again noting "no allegation or evidence Bardos acted maliciously, wantonly, reckless, or in bad faith," the trial court concluded that "[h]is acts were in the course and scope of his employment" with the school district, and he was entitled to immunity under R.C. 2744.03(A)(6) and 2744.07(A)(1). (Decision at 8.)

{¶ 16} Under Ohio law, courts apply a "three-tiered analysis" in determining whether a political subdivision is entitled to immunity under R.C. Chapter 2744. *Smith v. McBride,* 130 Ohio St.3d 51, 2011-Ohio-4674, ¶ 13. The first tier concerns "the general grant of immunity" pursuant to R.C. 2744.02(A)(1), "which provides that 'a political subdivision is not liable in damages in a civil action for injury, death, or loss to person or property allegedly caused by any act or omission of the political subdivision or an employee of the political subdivision in connection with a governmental or proprietary function.' " *Id.* Political subdivision immunity, however, "is not absolute," and "[t]he second tier of the analysis focuses on the five exceptions to immunity listed in R.C. 2744.02(B), which can expose the political subdivision to liability." *Id.* at ¶ 14. Finally, "[i]f any of the exceptions to immunity of R.C. 2744.02(B) do apply, and if no defense in that section applies to negate the liability of the political subdivision under that section, then the third tier of the analysis requires an assessment of whether any defenses in R.C. 2744.03 apply to reinstate immunity." *Id.* at ¶ 15.

{¶ 17} As indicated, the trial court initially determined appellant's allegations implicated the performance of a governmental function. R.C. 2744.01(C)(2)(c) states in part: "A 'governmental function' includes, but is not limited to, * * * [t]he provision of a system of public education."

{¶ 18} On appeal, appellant concedes the conduct at issue, i.e., a rocket experiment as part of a school science class project, constitutes a governmental function for purposes of R.C. Chapter 2744. Accordingly, as to the first tier, appellant does not challenge the fact the school board "enjoys initial protection" under R.C. 2744.02(A)(1) as a political subdivision engaged in a governmental function. *Fleming v. Vanguard Sentinel Joint Vocational School,* 6th Dist. No. S-02-030, 2003-Ohio-2134, ¶ 10.

{¶ 19} We therefore turn to the second tier of the analysis, involving a consideration of whether any of the five exceptions under R.C. 2744.02(B) are applicable. On appeal, the only exception appellant relies on is R.C. 2744.02(B)(4), also known as the "physical defect exception to immunity." *McCullough v. Youngstown City School Dist.*, 7th Dist. No. 18 MA 0075, 2019-Ohio-3965, ¶ 30.

{¶ 20} R.C. 2744.02(B)(4) provides in part that "political subdivisions are liable for injury, death, or loss to person or property that is caused by the negligence of their employees and that occurs within or on the grounds of, and is due to physical defects within or on the grounds of, buildings that are used in connection with the performance of a governmental function." Thus, R.C. 2744.02(B)(4) removes "the general immunity afforded political subdivisions engaged in a governmental activity only if an injury is: 1) caused by employee negligence, 2) on the grounds or in buildings used in connection [with] that governmental activity, and 3) due to physical defects on or within those grounds or buildings." *Hamrick v. Bryan City School Dist.,* 6th Dist. No. WM-10-014, 2011-Ohio-2572, ¶ 25.

{¶ 21} It has been noted that "[t]he phrase 'physical defect' is not defined in R.C. Chapter 2744" but, "in general, courts have held the R.C. 2744.02(B)(4) physical defect exception may apply if the instrumentality that caused [the] injury did not operate as intended due to a perceivable condition or if the instrumentality contained a perceivable imperfection that impaired its worth or utility." *Jones v. Delaware City School Dist. Bd. of Edn.*, 5th Dist. No. 2013 CAE 01 0009, 2013-Ohio-3907, ¶ 22, citing *Leasure v. Adena Local School Dist.*, 4th Dist. No. 11CA3249, 2012-Ohio-3071.

{¶ 22} Appellant argues that the exception under R.C. 2744.02(B)(4) is applicable because the rocket constructed by students as part of the science class project did not

operate as intended. Accordingly, appellant maintains, the rocket constitutes a "physical defect" for purposes of this exception.

{¶ 23} In response, appellees note that appellant failed to plead an immunity exception under R.C. 2744.02(B), nor did appellant argue before the trial court that such an exception applied. Appellees further argue that appellant has failed to cite any case in support of the proposition that a rocket experiment, in which the rocket was built and constructed by the student herself (as well as other students), would qualify as a physical defect on the grounds or buildings of a political subdivision. Appellees maintain that cases applying the physical defect exception under R.C. 2744.02(B)(4) involve structures of the buildings and maintenance of those structures.

{¶ 24} Upon review, we agree with appellees that the complaint contained no allegation the rocket constituted a "physical defect" within or on the grounds of buildings used in connection with the performance of a governmental function. However, while the trial court found appellant failed to point to any immunity exception under R.C. 2744.02(B), we note the court nevertheless considered whether any of the exceptions under that provision were applicable. Specifically, finding R.C. 2744.02(B)(4) to be the only potential exception at issue based on the facts alleged, the trial court determined such exception to be inapplicable where the negligence allegedly occurred in the demonstration of a rocket launch, as "the parts used to construct the rocket are not 'grounds' " under this same exception. (Decision at 7.)

{¶ 25} As observed by appellees, Ohio cases addressing the "physical defect" exception in general involve physical defects as part of the structure of buildings and the maintenance of those structures. *See*, *e.g.*, *Jones* at ¶ 24 (finding genuine issues of material fact remained because orchestra pit without reflective tape and lights might constitute physical defect); *Diaz v. Cuyahoga Metro. Housing Auth.,* 8th Dist. No. 92907, 2010-Ohio-13, ¶ 13 (trial court properly denied motion for judgment on the pleadings where plaintiff's complaint alleged that defect in window constituted physical defect and that political subdivision failed to properly maintain premises resulting in window striking plaintiff's daughter); *Leasure* (finding physical defect exception to immunity of R.C. 2744.02(B)(4) applicable where gymnasium bleachers not properly extended and in a locked position when set up); *Moss v. Lorain Cty. Bd. of Mental Retardation,* 185 Ohio App.3d 395, 2009-

Ohio-6931 (9th Dist.), ¶ 16 (allegation that kitchen area in classroom was negligently designed and constituted physical defect set forth sufficient facts which, if proven, demonstrated applicability of exception under R.C. 2744.02(B)).

{¶ 26} As noted, appellant seeks to invoke the exception under R.C. 2744.02(B)(4) based on the contention that the rocket, constructed by students as part of a science project, constituted a "physical defect." However, as alluded to by the trial court, the purported defect arises from activity related to the science experiment itself, including the manner in which the parts of the rocket were designed and assembled by the students, as well as the allegation that Bardos failed to take proper precautions to supervise the demonstration (i.e., by failing to keep the students a safe distance away from the launch). Based on the facts presented, we find no error with the trial court's determination that the alleged defect was not a "physical defect" within or on the grounds or buildings of the political subdivision as contemplated by R.C. 2744.02(B)(4). Accordingly, we further agree with the trial court's conclusion that none of the immunity exceptions under R.C. 2744.02(B) are applicable.

{¶ 27} Moreover, even if we were to find the school board's immunity was removed under R.C. 2744.02(B)(4), we agree with the trial court's determination that immunity would be restored under the defense contained in R.C. 2744.03(A)(5). In accordance with R.C. 2744.03(A)(5), a political subdivision is immune from liability if the injury "resulted from the exercise of judgment or discretion in determining whether to acquire, or how to use, equipment, supplies, materials, personnel, facilities, and other resources unless the judgment or discretion was exercised with malicious purpose, in bad faith, or in a wanton or reckless manner." *See also Elston v. Howland Local Schools,* 113 Ohio St.3d 314, 2007-Ohio-2070, ¶ 32 (under R.C. 2744.03(A)(5), "a political subdivision is immune from liability if the injury complained of resulted from an individual employee's exercise of judgment or discretion in determining whether to acquire or how to use equipment or facilities unless the judgment or discretion was exercised with malicious purpose, in bad faith, or in a wanton or reckless manner").

{¶ 28} In *Elston*, the Supreme Court of Ohio noted that teachers, "as employees of a political subdivision, have 'wide discretion under R.C. 2744.03(A)(5) to determine what level of supervision is necessary to ensure the safety of the children in' their care." *Id.* at ¶ 20, quoting *Marcum v. Talawanda City Schools,* 108 Ohio App.3d 412, 416 (12th

Dist.1996). In this respect, it has been held that "a teacher's method of conducting a physical education class was a method confined to the exercise of his judgment or discretion." *Banchich v. Port Clinton Public School Dist.,* 64 Ohio App.3d 376, 378 (6th Dist.1989), citing *Mosely v. Dayton City School Dist.,* 2d Dist. No. 11336 (July 6, 1989). Similarly, it has been held that a school board was immune from liability under R.C. 2744.03(A)(5) because the manner in which a teacher instructed his students and the decision to permit the students to assist him in moving cafeteria tables necessarily involved "the exercise of discretion or judgment vis-à-vis the use of equipment, facilities and other resources." *Sargeant v. Gallipolis Bd.,* 4th Dist. No. 92 CA 43 (Oct. 14, 1993).

{¶ 29} Ohio courts have held that "the use or non-use of equipment or safety devices constitutes an exercise of judgment or discretion within the purview of R.C. 2744.03(A)(5)." *Fields v. Talawanda Bd. of Edn.,* 12th Dist. No. CA2008-02-035, 2009-Ohio-431, ¶ 13. In a similar vein, "the manner in which a teacher instructs a student to use a piece of school equipment, the manner in which the student is supervised and the manner in which the equipment is maintained and inspected have all been determined to be discretionary acts sheltered from liability." *Angelot v. Youngstown Bd. of Edn.,* 7th Dist. No. 96 CA 90 (Sept. 18, 1998), citing *Banchich* at 378. Thus, it has been held that "a teacher's method of conducting a class, as well as whether and how to use equipment during the course of the class, is a matter that is well within the discretion of the teacher." *Id.*

{¶ 30} In addressing the defense under R.C. 2744.03(A)(5), we initially note the record supports appellees' contention that the complaint did not allege Bardos acted with malice, bad faith, or reckless conduct. In *Elston,* the Supreme Court "concluded that the appellate court 'strayed well beyond the pleadings and erred in reversing the judgment of the trial court' when the amended complaint failed to allege malice, bad faith, or wanton or reckless conduct." *Folmer v. Meigs Cty. Commrs.,* 4th Dist. No. 16CA17, 2018-Ohio-31, ¶ 34, quoting *Elston* at ¶ 31. Further, it has been noted that "[a]fter *Elston*, appellate courts have concluded that allegations of malice, bad faith, or wanton or reckless conduct must be included in a plaintiff's complaint against a political subdivision in order for the issues to be considered on summary judgment." *Id. See also Essman v. Portsmouth*, 4th Dist. No. 09CA3325, 2010-Ohio-4837, ¶ 60 ("Generally, if a complaint fails to allege that the political

subdivision acted with malice, bad faith, or wanton or reckless conduct, a court reviewing a summary judgment decision may not consider this issue on appeal.").

{¶ 31} Appellant argued before the trial court, in her response to appellees' motion for summary judgment, that the failure to allege Bardos acted maliciously, wantonly, recklessly or in bad faith could be inferred from the complaint. The trial court found, however, that the record on summary judgment failed to present evidence of such conduct, and that the evidence indicated Bardos was exercising his discretion in the use of equipment, supplies, and materials. We agree.

{¶ 32} Under Ohio law, "[o]ne acts with a malicious purpose if one willfully and intentionally acts with a purpose to cause harm." *Moss* at ¶ 19, citing *Piro v. Franklin Twp.,* 102 Ohio App.3d 130, 139 (9th Dist.1995). Bad faith has been "defined as a 'dishonest purpose, moral obliquity, conscious wrongdoing, [or] breach of a known duty through some ulterior motive or ill will.' " *Id.,* quoting *Lindsey v. Summit Cty. Children Servs. Bd.,* 9th Dist. No. 24352, 2009-Ohio-2457, ¶ 16.

{¶ 33} An individual "acts wantonly if that person acts with a complete 'failure to exercise any care whatsoever.' " *Id.,* quoting *Fabrey v. McDonald Village Police Dept.,* 70 Ohio St.3d 351, 356 (1994). Finally, "[o]ne acts recklessly if one is aware that one's conduct 'creates an unreasonable risk of physical harm to another.' " *Id.,* quoting *Thompson v. McNeill,* 53 Ohio St.3d 102, 104 (1990). In this respect, "[r]ecklessness is more than mere negligence in that the person 'must be conscious that his [or her] conduct will in all probability result in injury.' " *Id.,* quoting *Fabrey* at 356. Further, "[m]ere negligence is not converted into wanton or reckless conduct unless the evidence establishes a ' "disposition to perversity on the part of the tortfeasor," and "[s]uch perversity must be under such conditions that the actor must be conscious that his conduct will in all probability result in injury." ' " *Simmons v. Yingling,* 12th Dist. No. CA2010-11-117, 2011-Ohio-4041, ¶ 43, quoting *Rankin v. Cuyahoga Cty. Dept. of Children & Family Servs.,* 118 Ohio St.3d 392, 2008-Ohio-2567, ¶ 37 (Internal citation omitted.)

{¶ 34} In his deposition, Bardos, who has taught in the Columbus City Schools for 31 years, testified that the class rocket project teaches "design process." The students construct the rockets as a group project, and use materials "such as cardboard, paper towel rolls, plastic tubes." The students research and plan "ahead of time," and "we reviewed

their plan." (Bardos Depo. at 7.) Bardos supplies the engines and launcher, and he "launched all the rockets" himself, using a "remote." (Bardos Depo. at 8.)

{¶ 35} Prior to the launch, Bardos "inspected each rocket." Each rocket had to meet certain requirements; the rocket "had to be 53 ounces or lighter," contain "three fins * * * securely attached either by tape or glue," which Bardos "tested," and "[t]here had to be a parachute installed inside of it." (Bardos Depo. at 14.) Each rocket also had "a cone on the top that was slightly open so that the parachute could engage once it got into the air." Bardos kept "the launcher in the class" to check for "tilting to one side or another," and if he observed any tilting, or that a design was "top heavy," he instructed the students to "redesign it." Bardos stated "these are all expressed in the lesson plan guidelines for the rocket." (Bardos Depo. at 15.) Bardos sent a copy of the guidelines home with the students "before we actually did the activity." (Bardos Depo. at 23.)

{¶ 36} The engine came from a kit, and Bardos used "the second to lowest powered engine * * * because it suggests the lower power engines are safer." Bardos stated he made sure to use "the safest one." (Bardos Depo. at 16.) Bardos obtained specialized training and had taught this project "for 23 years. It is part of our design curriculum * * * and we * * * went through a couple of workshops about it, how to have the kids go through the design process." (Bardos Depo. at 16-17.)

{¶ 37} On May 24, 2011, appellant's group of "about 3 or 4" students participated in the launch of their rocket, which took place in a level, "open area," located "in the back of the parking lot." (Bardos Depo. at 8, 12.) Bardos stated that he "followed the guidelines" that the launch be "in an open area at a safe distance." (Bardos Depo. at 23.) Bardos testified that "[t]he students were 50 to 65 feet away from it, so they were more than the safe distance required to be from that." (Bardos Depo. at 9.)

{¶ 38} With respect to appellant's rocket, Bardos "checked the fins. They were adhered very securely. * * * [T]heir group had the parachute exactly where it was supposed to be. * * * [I]t passed inspection." (Bardos Depo. at 25-26.) Bardos "slid it onto the launcher to make sure it wasn't titling one way or the other," and "made sure the weight was evenly distributed." (Bardos Depo. at 26.)

{¶ 39} Bardos related that the rocket "went up about 15 feet and immediately veered right toward them." In "the 23 years prior to doing [the rocket launch] that never

happened." (Bardos Depo. at 9.) Bardos was standing "by the launcher," and he "saw it go up and then veer." He "told the kids to move as quickly as possible." (Bardos Depo. at 10.) Bardos "ran over there" and "got [appellant's] shoe off as quickly as possible, and * * * took her into the nurse * * * as quickly as I could." (Bardos Depo. at 11.) After retrieving the rocket, Bardos observed that "one of the fins had come off. When it came off, I don't know." (Bardos Depo. at 26.) Bardos stated the accident "wasn't anyone's fault. * * * No one knows why it veered off like that." (Bardos Depo. at 21.) He stated there "isn't any other precaution you could take to prevent that." (Bardos Depo. at 22.)

{¶ 40} In her deposition testimony, appellant stated that "we made the rocket ourselves before we went out to launch it." (Douglas Depo. at 25.) The materials for the rocket consisted of "plastic bottles or just papers, construction papers that are colored." Appellant stated "[we] probably worked on it for about a week in class." (Douglas Depo. at 27.) Bardos instructed them "[n]ot to make it too big or heavy because it wouldn't go up in the air." (Douglas Depo. at 30.)

{¶ 41} During the launch, Bardos instructed the students "to be a certain feet away from the rocket." (Douglas Depo. at 30.) Appellant recalled "[t]he launch was * * * near the grass, and * * * the students were like a half sphere around the rocket but a certain feet away." According to appellant, her "guess" was the students were "about 15 feet" away from the launch, but "I can't exactly remember how many feet." (Douglas Depo. at 32.)

{¶ 42} Appellant was standing up at the time her rocket was launched. She thought her group put their rocket on the launch pad, but was "not sure." The rocket was pointed straight up and Bardos ignited the rocket engine. Appellant testified that "[t]he rocket was launched, but it didn't go straight up." Rather, the rocket went "sideways" and "hit me on the leg." (Douglas Depo. at 39.) Appellant "didn't expect what happened to happen to me," and testified she had no reason to believe Bardos knew the rocket was going to hit her. (Douglas Depo. at 36.)

{¶ 43} Based on this court's de novo review of the pleadings and evidentiary materials submitted on summary judgment, there is no evidence to establish appellees "created an unreasonable risk of harm" or acted with "a perverse disregard" for the fact students might be injured as a result of the way the science class "was conducted, the course was designed, or the manner in which the students were supervised." *Simmons* at ¶ 50.

Here, the record supports the trial court's determination that Bardos "was exercising his discretion in the use of equipment, supplies and materials," and the record further supports the trial court's conclusion there is no evidence (or allegation) that Bardos' discretion was exercised with malicious purpose, in bad faith, or in a wanton or reckless manner. Accordingly, the trial court did not err in finding the school board immune from liability pursuant to R.C. 2744.03(A)(5).

{¶ 44} We also conclude the trial court did not err in finding Bardos was immune from liability under R.C. 2744.03(A)(6) based on the court's determination that his acts were in the course and scope of his employment and that there was no allegation or evidence he acted maliciously, wantonly, recklessly or in bad faith. The trial court, therefore, did not err in granting summary judgment in favor of appellees.

{¶ 45} Appellant further contends the trial court erred in failing to grant summary judgment in her favor. As stated under the facts, appellant filed a motion for summary judgment asserting a claim for strict liability based on the doctrine of res ipsa loquitor. As noted by appellees, however, the doctrine of res ipsa loquitor is only an evidentiary ruling permitting a trier of fact to draw an inference of negligence and is not a separate cause of action. *See, e.g.*, *Kniskern v. Twp. of Somerford*, 112 Ohio App.3d 189, 198 (10th Dist.1996) ("The doctrine of *res ipsa loquitor* is not a theory of tort liability; rather it is the doctrine of evidence which permits a plaintiff to prove negligence circumstantially."). *See also Nester v. Textron, Inc.,* D.C.W.D.Tex. No. 1:13-CV-920-DAE (Dec. 22, 2015), quoting *Haddock v. Arnspiger*, 793 S.W.2d 948, 950 (1990) ("*res ipsa loquitor* is 'simply a rule of evidence by which negligence may be inferred by the jury; it is not a separate cause of action from negligence' "). Accordingly, the trial court did not err in denying appellant's motion for summary judgment based on a claim for liability under the doctrine of res ipsa loquitor.

{¶ 46} Based on the foregoing, appellant's three assignments of error are overruled, and the judgment of the Franklin County Court of Common Pleas granting summary judgment in favor of appellees and denying the motion for summary judgment of appellant is affirmed.

*Judgment affirmed.*

DORRIAN and LUPER SCHUSTER, JJ., concur.

_____