[Cite as *Shields v. Plummer*, 2020-Ohio-5449.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| Amatullah Shields et al., | : | |
| Plaintiffs-Appellants, | : | No. 20AP-214 |
| v. | : | (C.P.C. No. 17CV-10088) |
| Courtney N. Plummer et al., | : | (ACCELERATED CALENDAR) |
| Defendants-Appellees. | : | |

D E C I S I O N

Rendered on November 25, 2020

**On brief:** *Fitrakis & Gadell-Newton*, *Robert J. Fitrakis*, and *Constance A. Gadell-Newton*, for appellants. **Argued:** *Robert J. Fitrakis.*

**On brief:** *Crabbe Brown & James, LLP*, and *John C. Albert,* for appellees. **Argued:** *John C. Albert.*

APPEAL from the Franklin County Court of Common Pleas

NELSON, J.

{¶ 1} As presented to us, this appeal hinges solely on whether injury arising from a public school teacher's use (or misuse) of a lycra "Body Sox" garment arguably to restrain an autistic child can be said to have been "due to physical defects within or on the grounds of * * * buildings that are used in connection with" the school. *See* R.C. 2744.02(B)(4). Because the statutory provision does not stretch that far, we are obliged to affirm the trial court's grant of summary judgment against plaintiff-appellants, the child and his mother.

{¶ 2} The facts suggested by the record are unfortunate and compel empathy and concern. Because the record incorporates materials that were before a federal district court for resolution of federal claims, *see Crochran v. Columbus City Schools*, 278 F. Supp. 3d 1013 (S.D.Ohio 2017), we draw in part upon that court's accurate description of the event's factual outline while noting again that the issue presented to us is one of law.

{¶ 3}   N.C. was a fifth-grade student in Courtney Plummer's special education class at South Mifflin STEM Academy.  "He has been diagnosed with autism and ADHD[.]"  *Id.* at 1017.  Ms. Plummer testified that on February 20, 2013, in an attempt to calm N.C. and at the suggestion of a fell0w special education teacher, she asked N.C. if he wanted to wear a body sock (that the school owned and that the colleague had in her closet there).  *Id.* at 1017-18.  The body sock is a stretchable, bag-like lycra garment with a velcro opening; it "forms around the child's arms in loose sleeves, allowing the child full use of his or her arms" while producing full-body "sensory effect."  *Id.* at 1018 (with illustrations).  N.C. accepted his teacher's invitation to step into the body sock:  "within seconds," he fell and "hit the floor with his face."  *Id.*  The complaint filed on behalf of N.C. and his mother in this case alleges that "[t]wo of [N.C.]'s front teeth were injured by his fall"; that the injuries required "root canal procedures on both teeth"; and that the family has incurred more than $19,000 in related medical expenses to date, with more medical issues to come.  Complaint at ¶ 25-30.

{¶ 4}   N.C. and his mother do not allege that there was anything defective about the body sock itself.  Rather, they note that Ms. Plummer, who had "never used the body sock on a student before" and was not trained in its use, knew from N.C.'s Individualized Education Plan that he had balance and body control problems" relating to " 'notable postural sway with higher level balance activities,' * * * 'weakness of his musculature, most notably of his core and postural musculature,' and 'below average gross motor skills.' "  *Id.* at ¶ 18, 14 (quoting from IEP); *see also* Plummer Dep. at 27, 55, 8, 11-12 and Ex. 1.   She should not have employed the body sock to cover N.C., they urge, especially with him standing on the hard surface of the classroom floor, *see* Plummer Dep. at 38, and she acknowledged having been "later informed that she shouldn't have used this tool because it was not in [N.C.]'s individualized educational program," *see* Dep. of Franklin County Children's Services official Jamie Chambers at 28.   Appellants' Brief at 8-9, 11 (reciting deposition testimony), 12-13 (citing expert report of Sarah Miller, M.S.Ed. "When body socks were put on my students, none of them remained standing.  This protected them from falling down and getting injured. * * * None of my students had their faces covered by the body sock. * * * Ms. Plummer * * * did not take precautions to protect him against injury

from a fall, such as having him sit in the body sock instead of stand, placing him on a floor mat or other soft surface, or leaving his head and face uncovered.").

{¶ 5}    N.C. and his mother brought suit first in federal court against Ms. Plummer, the Columbus Board of Education, and Columbus City Schools.  *Crochran* at 1017.  Judge Sargus granted defendants' motion for summary judgment on the federal claims (brought under 42 U.S.C. 1983, alleging equal protection, "substantive due process," and Fourth Amendment violations, as well as under the Individuals with Disabilities in Education Act, the Americans with Disabilities Act, and the Rehabilitation Act), and declined to exercise supplemental jurisdiction over the state law claims.  N.C. and his mother then filed the case now appealed to us, naming the same three defendants and alleging claims of negligence, negligent and/or intentional infliction of emotional distress, and false imprisonment, as well as negligent supervision by and vicarious liability against the school defendants (as to which the complaint alleged political subdivision immunity did not apply because Ms. Plummer acted in bad faith and recklessly).  November 13, 2017 Complaint.

{¶ 6}    All defendants moved for summary judgment on January 19, 2018.  The trial court granted the summary judgment motion and awarded "judgment to Defendants as to all of Plaintiffs' claims," dismissing the complaint with prejudice in a Final Judgment Entry filed April 2, 2020. Final Judgment Entry at 10. The trial court correctly noted that summary judgment is appropriate only where, "viewing the evidence most strongly in favor of the non-moving party," there is no genuine issue of material fact that could preclude judgment to the moving party and the moving party is entitled to judgment as a matter of law.  *Id.* at 3, citing Civil Rule 56 and *Bostic v. Connor*, 37 Ohio St.3d 144 (1988), while also noting burden allocation, citing *Dresher v. Burt*, 75 Ohio St.3d 280, 293 (1996).

{¶ 7}    Citing to *Ohio Bell Tel. Co. v. Columbus*, 10th Dist. No. 09AP-113, 2009-Ohio-5126 (which involved that lone defendant), the trial court found that "[i]n order to hold [any of the] Defendants liable for negligence, Plaintiffs must demonstrate that their claims fit into one of the exceptions to [political subdivision] immunity stated in R.C. 2744.02(B)[.]" Final Judgment Entry at 4-6.  Not differentiating among the defendants for this analysis, and without citation to authority involving individual defendants, the trial court continued: "the Court does not look to R.C. 2744.03 [providing for certain defenses or immunities that a political subdivision or an employee of a political subdivision variously may advance

against claims] unless Plaintiffs first show their claims satisfy an exception to immunity" under R.C. 2744.02. *Id.* at 6.

{¶ 8}   The "only" such "exception to immunity that Plaintiffs point to is R.C. 2744.02(B)(4)," the trial court stated. *Id.* (also noting that the operation of a school district is a governmental function).  For that exception to obtain, the trial court recited, N.C. and his mother were required to point to evidence "that [N.C.] suffered an injury that:  (1) was caused by the negligence of an employee of a political subdivision; (2) occurred in or on the grounds of a building owned by the political subdivision; and (3) was due to a physical defect within or on the grounds of the building." *Id.*  But, the trial court concluded, "[w]hile [N.C.'s] injuries occurred due to Ms. Plummer's negligence and occurred on the ground of South Mifflin STEM Academy, Plaintiffs have failed to show the existence of a physical defect." *Id.* at 6-7.  "[T]he only defect that Plaintiffs point to is that a body sock was used. A body sock is neither part of South Mifflin STEM Academy nor part of its grounds. * * * * [And] Plaintiffs have presented no evidence to show it suffered from a physical defect." *Id.* at 7.  Thus, reasoned the trial court, "Plaintiffs' negligence claims fail." *Id.* at 8.  In sum, the trial court found that all "Defendants are immune from Plaintiffs' negligence claims pursuant to R.C. 2744.02." *Id.* at 10.

{¶ 9}   The trial court granted summary judgment on the other claims, too.  Nothing in the record reflected an "intent" to cause N.C. "any harm," and therefore "Plaintiffs' claim for intention[al] infliction of emotional distress fails." *Id.* at 8.  The false imprisonment claim failed for the same reason. *Id.* at 9.  The intentional infliction and false imprisonment claims also failed because N.C. and his mother made no arguments to support them in briefing their summary judgment opposition:  "Plaintiffs * * * essentially abandoned these claims," the trial court determined. *Id.*

{¶ 10}   Under a single assignment of error submitting that the trial court erred in granting summary judgment, Appellants' Brief at iv, 14, N.C. and his mother identify three issues for our review (each with citations to the record):

> 1.   Was plaintiff-appellant [N.C.] injured by a physical defect within or on the grounds of a building used in connection with the performance of a governmental function?

2. Did the claims of plaintiffs-appellants satisfy the exception
   to immunity contained in R.C. 2744.02(B)(4)?

3. Did the claims of plaintiffs-appellants satisfy the exception
   to immunity contained in R.C. 2744.03(A)(5)?

Appellants' Brief at v. Each of these three specified issues relates to political subdivision immunity, and counsel for N.C. and his mother begin the brief's "Argument" section with a clear statement of their premise that:

> The defendants' tort liability under Ohio law is subject to political subdivision immunity under R.C. Chapter 2744. In determining whether a political subdivision is immune from tort liability, Ohio courts apply a three-tiered analysis.

Appellants' Brief at 14. "Public school districts are political subdivisions," the brief acknowledges, "and providing public education is a governmental function." *Id.*

{¶ 11} The brief thus moves to "The Second Tier: Applicable Statutory Exceptions to Governmental Function Immunity," *id.* at 15, where it argues exclusively the point that "R.C. 2744.02(B)(4) creates an exception from immunity for injuries resulting from the negligence of political subdivision employees occurring 'within or on the grounds of, and is due to physical defects within or on the grounds of, buildings that are used in connection with the performance of a governmental function.' " *Id., see also id.* at 15-19. The brief then concludes with discussion of "The Third Tier: Applicable Defenses," submitting that with the R.C. 2744.02(B)(4) exception established, the specific further immunity referenced in R.C. 2744.03(A)(5) (making a political subdivision immune for an injury that results from the exercise of judgment or discretion in determining how to use equipment, "unless the judgment or discretion was exercised with malicious purpose, in bad faith, or in a wanton or reckless manner") does not apply because Ms. Plummer acted in bad faith and was reckless. *Id.* at 19. "Appellants therefore satisfied the immunity exception contained in R.C. 2744.03(A)(5)," Appellants' Brief argues. *Id.* at 20.

{¶ 12} We review a grant of summary judgment de novo. But we generally do so as informed by the particular arguments that appellants present: we are not in the custom of generating new arguments on appeal or of finding error that was not specified by a party. " 'It is the duty of the appellant, not the appellate court, to construct the legal arguments necessary to support the appellant's assignments of error.' " *Cook v. Ohio Dept. of Job &*

*Family Servs.*, 10th Dist. No. 14AP-852, 2015-Ohio-4966, ¶ 40, quoting *Bond v. Canal Winchester*, 10th Dist. No. 07AP-556, 2008-Ohio-945, ¶ 16. *See also Young v. Locke*, 10th Dist. No. 13AP-608, 2014-Ohio-2500, ¶ 16 ("App.R. 16(A)(7) requires that an appellate brief contain an argument in support of each assignment of error presented for review with citations to the authorities, statutes, and parts of the record on which appellant relies"); *State v. Brown*, 10th Dist. No. 16AP-753, 2017-Ohio-7134, ¶ 14 (citing Appellate Rules 12 and 16); *McKahan v. CSX Transp., Inc.*, 10th Dist. No. 09AP-376, 2009-Ohio-5359, ¶ 10 (noting that it is not the duty of an appellate court to create an argument on an appellant's behalf); *Miller v. Johnson & Angelo,* 10th Dist. No. 01AP-1210, 2002-Ohio-3681, ¶ 2 ("The burden of affirmatively demonstrating error on appeal rests with the [appellant]"); *compare Dardinger v. Anthem Blue Cross & Blue Shield*, 98 Ohio St.3d 77, 97 (2002)("Parties must decide their issues, incorporate them into their strategy, and be responsible for the results[.]"). It would seem especially treacherous for us to deviate from that general approach here, in light of the laser focus of Appellants' Brief and of their oral argument on the proposition that the "key issue" we are to resolve is the question of whether N.C.'s injuries can be said to be due to a physical defect within or on the grounds of the school.

{¶ **13**}  Because N.C. and his mother have made the existence of an exception under R.C. 2744.02(B)(4) the predicate to their argument on appeal, we turn to that statutory exception. It reads:

> Except as otherwise provided in section 3746.24 of the Revised Code, political subdivisions are liable for injury, death, or loss to person or property that is caused by the negligence of their employees and that occurs within or on the grounds of, *and is due to physical defects within or on the grounds of*, buildings that are used in connection with the performance of a governmental function * * * .

R.C. 2744.02(B)(4) (emphasis added).

{¶ **14**}  Citing *Hubbard v. Canton City School Bd.*, 97 Ohio St.3d 451, 2002-Ohio-6718, ¶ 13, N.C. and his mother posit that with R.C. 2744.02(B)(4), "[t]he General Assembly intended that political subdivisions be sued 'where injury results from the negligence of their employees occurring within or on the grounds of any government building.' " Appellants' Brief at 15-16, quoting *Hubbard*. *Hubbard* did say that. But then the General

Assembly amended the statute to add the "due to physical defects" limitation italicized above. *See, e.g., Contreraz v. Bettsville*, 3d Dist. No. 13-10-48, 2011-Ohio-4178, ¶ 33 ("in 2003, the Ohio General Assembly amended R.C. 2744.02(B)(4) and explicitly added the language 'and is due to physical defects within or on the grounds.' This is the current version of the statute. Because the current version of the statute clearly contains the additional 'physical defect' language, it has [for cases after the effective date of the statute] essentially invalidated the analysis rendered in *Hubbard* * * * * Since that time, appellate courts have generally limited the R.C. 2744.02(B)(4) exception to injuries that were 'due to physical defects' ") (citations omitted); *Speiker v. Toledo Pub. Schools*, 2010 U.S. Dist. Lexis 66730, * 5-6 (N.D.Ohio July 2, 2010) ("*Hubbard* was decided before Section 2744.02(B)(4) was amended, in 2003, to its current version. The amended version specifically added the language 'and is due to physical defects within or on the grounds * * *,' thus invalidating the analysis in *Hubbard*.").

{¶ 15} N.C. and his mother then proceed to argue that "physical hazards that threaten the safety of special-needs students satisfy the 'physical defect' element," and that so do "[i]mproper use of an instrument," and "[c]reating an unsafe area." Appellants' Brief at 16-17, citing *Moss v. Lorain Cty. Bd. of Mental Retardation*, 185 Ohio App.3d 395, 2009-Ohio-6931, ¶ 16 (9th Dist.); *Leasure v. Adena Local School Dist.*, 4th Dist. No. 11CA3249, 2012-Ohio-3071, ¶ 20; *Moore v. Lorain Metro Housing Auth.*, 121 Ohio St.3d 455, 2009-Ohio-1250, ¶ 25, and *Roberts v. Switzerland of Ohio Local School Dist.*, 7th Dist. No. 12 MO 8, 2014-Ohio-78, ¶ 30.

{¶ 16} But those cases are inapposite to these circumstances. *Moss* affirmed denial of a motion for judgment on the pleadings, where the plaintiff alleged "negligent design, maintenance and construction" of a kitchen located in the classroom of a child with Down syndrome who was scalded there, 2009-Ohio-6931 at ¶ 16; no such building defect is alleged here. The panel in *Leasure* again confronted problems with the physical plant: evidence suggested that "improperly set up bleachers" had "become unstable and, thus, * * * fail[ed] to operate as intended"; "[t]he improper setup resulted in the bleachers * * * mov[ing] while in use * * * * [and] resulted in the bottom step being shorter than the other steps." 2012-Ohio-3071 (also noting that "when the instrumentality that caused the plaintiff's injury operated as intended – or when it did not contain any perceivable

imperfection that impaired or diminished its utility – the courts have concluded that the instrumentality did not constitute a physical defect"). *Moore* held that running a public housing authority is a governmental function, and remanded the case to determine whether "absence of a required smoke detector is a 'physical defect' occurring on the grounds of the [housing authority's] property." 121 Ohio St.3d at 460. No such infirmity is alleged with regard to the body sock here. And *Roberts* concerned whether an improvidently designated "safe zone" that was not in fact safe for the track and field athlete who was standing there when she was struck by a thrown discus could amount to a physical defect in light of the lack of discus circle fencing. 2014-Ohio-78, at ¶ 25 (motion to dismiss stage).

{¶ 17} Here, N.C. and his mother point to no such physical defects or infirmities, either at South Mifflin STEM Academy or even in the body sock itself. Rather, they quarrel with Ms. Plummer's judgment and lack of training; they condemn her choice to use the garment and the way in which she used it. "Plummer improperly *used* the body sock because she was not trained or authorized to use it, and it was not prescribed for [N.C.]. Compounding its improper *use*, Plummer failed to have [N.C.] sit in the body sock to avoid injury." Appellants' Brief at 17 (emphasis added). But a teacher's lack of judgment and training, or her "use" of a perceived tool, is not a "physical defect[ ] within or on the grounds of" a school building, in the statutory formulation. *See, e.g., Contreraz*, 2011-Ohio-4178, at ¶ 40 (alleged "failure to appropriately train * * * and negligent and/or reckless hiring and training * * * clearly do not concern any physical defect regarding the premise" [or regarding even instruments on the premises]); *Douglas v. Columbus City Schools Bd. of Edn.*, 10th Dist. No. 18AP-940, 2020-Ohio-1133, ¶ 26 (allegation that teacher failed to take proper precautions with students during science experiment "was not [of] a 'physical defect' within or on the grounds or buildings of" the school). For us to hold otherwise would be to expunge the General Assembly's 2003 amendment from the text of R.C. 2744.02(B)(4). We are not empowered to do that.

{¶ 18} Thus, this court, with others across the state, has held that "the physical defect exception to immunity set forth in R.C. 2744.02(B)(4) applies only 'if the instrumentality that caused [the] injury did not operate as intended due to a perceivable condition or if the instrumentality contained a perceivable imperfection that impaired its worth or utility.' " *Slane v. Hilliard*, 10th Dist No. 15AP-493, 2016-Ohio-306, ¶ 44, quoting

*Jones v. Delaware City School Dist. Bd. of Edn.*, 5th Dist. No. 2013 CAE 01 0009, 2013-Ohio-3907, ¶ 22 (further citations omitted); *Douglas,* 2020-Ohio-1133, at ¶ 21 (same).

{¶ 19} We have adopted the understanding of other appellate districts that the "physical defect" language in R.C. 2744.02(B)(4) signifies an "imperfection that diminish[es] the worth or utility" of a tangible structure or object that gave rise to injury. *Gibbs v. Columbus Metro. Hous. Auth.*, 10th Dist. No. 11AP-711, 2012-Ohio-2271, ¶ 15-17 (no evidence that trash chute was improperly installed; citing *Duncan v. Cuyahoga Community College*, 8th Dist. No. 97222, 2012-Ohio-1949, ¶ 15, where failure to use floor mats in conducting a self-defense class was not a "physical defect" for purposes of (B)(4) subsection). That understanding flows from the ordinary meaning of the words used in the statutory phrase:

> "The word 'physical' [means] 'having a material existence: perceptible esp[ecially] through senses and subject to the laws of nature.' Merriam Webster's New Collegiate Dictionary (10th Ed. 1996) 877. A 'defect' is 'an imperfection that impairs worth or utility.' *Id.* at 302. *It would seem then that a 'physical defect' is a perceivable imperfection that diminishes the worth or utility of the object at issue.*"

*Gibbs* at ¶ 13, quoting (and adding emphasis to) *Hamrick v. Bryan City School Dist.,* 6th Dist. No. WM-10-104, 2011-Ohio-2572, ¶ 28 (garage's uncovered service pit operated as intended and, although plaintiff was injured by fall into pit, was not a "physical defect"); *compare Speiker*, 2010 U.S. Dist. Lexis 66730, at *7 (no allegation of physical defect; the "shelves functioned as intended").

{¶ 20} The trial court was correct that "the only defect that Plaintiffs point to is that a body sock was used," and that "Plaintiffs have presented no evidence to show it suffered from a physical defect." Final Judgment Entry at 7. N.C. and his mother argue to us that "use" of the body sock on N.C. "would create a substantial certainty that the child would fall and suffer injury," Appellants' Brief at 18-19, but that is not because of some errant defect in the sock but because of the way in which the sock was applied to "a standing child who had motor function * * * deficits," *id.* at 18. And again, a method or "use" is not a "physical defect" for purposes of the relevant statutory exception.

{¶ 21} Because N.C. and his mother fail to make out a case under the "second tier" of political subdivision immunity analysis, their "third tier" analysis (to overcome an R.C.

2744.03(A)(5) defense applicable if the R.C. 2744.02(B)(4) exception had been established) is moot. *Compare* Appellants' Brief at 19-20 ("The Third Tier: Applicable Defenses") *with, e.g., Coats v. Columbus,* 10th Dist. No. 06AP-681, 2007-Ohio-761, ¶ 19 (for political subdivision, "it is only necessary to consider whether one of the R.C. 2744.03 defenses applies if it is first determined that one of the exceptions to immunity in R.C. 2744.02(B)(1) through (5) applies, a hurdle appellant has not overcome in this case"). We observe again that N.C. and his mother have staked their affirmative case on their claim to a physical defect exception under R.C. 2744.02(B)(4) and have argued their appeal exclusively within the confines of the "three-tiered analysis" applicable to "political subdivision immunity under R.C. Chapter 2744." Appellants' Brief at 14 (summarizing argument). They do not in this appeal invoke R.C. 2744.03(A)(6) and any analysis that the trial court might have applied to the individual teacher "instead of the three-tiered analysis," *compare Cramer v. Auglaize Acres,* 113 Ohio St.3d 266, 2007-Ohio-1946, ¶ 17, and we do not find ourselves in a position to refashion their arguments.

{¶ 22} For the reasons set forth above in our discussion of their three "issues presented," we overrule plaintiff-appellants' single assignment of error.

{¶ 23} We note that on June 3, 2020, N.C. and his mother moved to "strike Appellees' merit brief." That motion rehearsed the three "issues presented," *see id.* at 8, and then urged that certain of the defendant-appellees' arguments should be barred as not preserved by a cross-appeal, *id.* at 9-11. But the trial court had awarded "judgment to Defendants as to all of Plaintiffs' claims," and "Plaintiffs' Complaint [was] DISMISSED WITH PREJUDICE." Final Judgment Entry at 10. That judgment apparently was good enough for defendant-appellees, for they do not seek to change it. *See* App.R. 3(C)(2) ("A person who intends to defend [a judgment or] an order appealed by an appellant on a ground other than that relied on by the trial court but who does not seek to change the [judgment or] order is not required to file a notice of cross-appeal or to raise a cross-assignment of error"). There is no reason in a case like this to impel the winning parties to file their own appeal. Moreover, tracking Appellants' Brief, we have not considered arguments beyond the scope of those raised by N.C. and his mother, so the basis of the request to strike is moot in any event.

{¶ 24}  We deny appellants' motion to strike and, having overruled their assignment of error, we affirm the judgment of the trial court.

*Motion to strike denied; judgment affirmed.*

SADLER, P.J. and DORRIAN, J., concur.

———————————