CURTIS, APPELLANT, *v.* STATE OF OHIO, OHIO STATE UNIVERSITY, ET AL., APPELLEES.

(No. 86AP-39—Decided September 18, 1986.)

*Calvin F. Hurd, Jr.* and *Walter P. Mahle,* for appellant.

*Anthony J. Celebrezze, Jr.,* attorney general, *Stephen P. Samuels* and *Karl W. Schedler,* for appellees.

MOYER, P.J.   This matter is before us on the appeal of plaintiff-appellant, Clarence W. Curtis, Jr., from a judgment of the Ohio Court of Claims finding in favor of defendant-appellee Ohio State University ("the university") on Curtis' claims for damages resulting from injuries sustained during football practice drills in French Field House.

On October 18, 1983, Curtis, who was a member of the Ohio State football team, was practicing with the team inside French Field House, an athletic facility at the university. Curtis was performing an exercise, referred to as "liners," which entailed running wind sprints in a north-south direction along yard lines on the artificial turf inside the field house. Curtis was injured when he proceeded beyond the area where the exercise was taking place, and struck a wire-reinforced glass door with his foot. His left foot and leg broke through the door resulting in serious injuries.

On December 9, 1983, Curtis filed suit in the Court of Claims. The complaint, as amended, alleges causes of action in nuisance and negligence, which were tried to the court. A bifurcated trial was set up separating the issue of liability, which was heard first, from the issue of damages, which became moot. The trial court found that the university did not have notice of the existence of a dangerous condition (allegedly, the wire-reinforced glass), if in fact a dangerous condition did exist; that the university was not on notice nor was it foreseeable that an athlete might come in contact with the door and sustain injury; that Curtis did not establish that the university failed to use ordinary care by not having replaced the wire-reinforced glass with a safety glass material; and that, therefore, Curtis failed to establish by a preponderance of the evidence that the university was negligent in failing to replace the glass with a more secure type of material.

Curtis appeals from the judgment of the trial court with three assignments of error:

"I. The plaintiff is entitled to a finding that the defendant university was negligent as a matter of law and that

said negligence was a proximate cause of plaintiff's injuries in that the uncontroverted evidence established:

"(a) The defendant knew that the installation of non-safety glass adjacent to an area of play created an unreasonable risk of harm to users of the French Field House;

"(b) The defendant stocked laminated safety glass which they [sic] installed in hazardous areas prior to and subsequent to 1975;

"(c) The defendant university was aware in 1976 that a tennis player had fallen into a glass door in the same facility and sustained serious injuries;

"(d) Laminated safety glass was not installed in the glass doors which resulted in plaintiff's injuries in 1983; and

"(e) That if laminated safety glass had been installed in said door, the plaintiff would have sustained minimal injuries if any.

"II. The court erred in failing to find that the defendant maintained a nuisance on the described premises and with knowledge, since 1975 and/or 1976, that said nuisance created an unreasonable risk of harm to users of said facility and it failed to abate said nuisance resulting in injury and damage to the plaintiff.

"III. The court erred in finding that the university had no knowledge of potential injury to users of the French Field House, that it was not foreseeable that a user including the plaintiff would likely be injured as a proximate result of the known condition of the premises and therefore said university was not negligent in the ownership, maintenance and use of said facility."

The first and third assignments of error are interrelated and will be considered together.

In his first assignment of error, Curtis contends that he was entitled to a finding of negligence as a matter of law. Alternatively, Curtis' third assignment of error challenges the findings of the trial court as being against the manifest weight of the evidence.

Although ordinarily a question of fact, negligence may become a question of law where all the relevant, material facts are undisputed, and admit of no rational inference but negligence or want of due care, and are sufficient to permit only a conclusion by reasonable minds against a party, after construing the evidence most favorably to that party. See *Rothfuss* v. *Hamilton Masonic Temple Co.* (1973), 34 Ohio St. 2d 176, at 181 [63 O.O.2d 270], and cases cited therein. See, also, 39 Ohio Jurisprudence 2d (1959) 792, Negligence, Section 179.

Curtis' first assignment of error is not well-taken. The parties presented conflicting evidence bearing on the various elements of negligence at issue: duty, breach of duty, and proximate causation. The relevant evidence permits reasonable minds to reach competing inferences regarding negligence by the university. Construing that evidence in favor of the university, we find there is no basis for a finding of negligence as a matter of law.

Moreover, we find competent, credible evidence in the record before us in support of the findings and judgment of the trial court challenged by Curtis, and, therefore, have no basis for reversing the judgment below. *C. E. Morris Co.* v. *Foley Construction Co.* (1978), 54 Ohio St. 2d 279 [8 O.O.3d 261], syllabus.

The trial court found that Curtis was an invitee to whom the university owed a duty to exercise ordinary or reasonable care to have the premises in a reasonably safe condition, and:

"* * * to inspect French Field House to discover possible dangerous conditions and to take reasonable precautions to protect its invitees * * * from dangers within the university's knowledge which are foreseeable from the arrangement or use of the facility." Cf. 2 Restatement of the Law 2d, Torts (1965), Sections 341(a), 343 and 343 A.

The evidence supports the trial court's refusal to apply a higher standard of care merely because the university employs a number of scientific and technical experts. Nothing in the record indicates that the athletic facilities were managed by such experts, or that other than ordinary management expertise was applied.

The evidence cited by Curtis does not support a finding that the university breached its duty to Curtis as a matter of law, nor does it convince us the other findings below are against the manifest weight of the evidence. For example, the university's knowledge that the French Field House doors had a high window breakage rate does not, in the absence of proof as to the cause of breakage (*e.g.,* vandalism, golf balls, baseballs, sports equipment, etc., or human contact), establish that the university knew of a dangerous condition.

Further, the university's safety policy of using tempered glass to replace broken glass, a policy begun two years before such glass was required by federal regulations, does not establish that the university knew of or considered the doors to be an unreasonable risk of harm. In support of the reasonableness of its maintenance policy and procedures, the university presented evidence, which the trial court was entitled to consider, that its practice was in compliance with applicable building codes and regulations regarding glass doors.

Finally, the fact that there has been, during thirty years of use of French Field House, one reported instance (in 1976) of injuries to an athlete (a tennis player) caused by impact with a glass door in French Field House, does not require a finding, as a matter of law, that the university was on notice of a dangerous condition or an unreasonable risk of harm.

Having found no breach of duty, the trial court refused to further consider the university's affirmative defenses of contributory negligence and assumption of risk, which are necessary to a complete determination of proximate cause and liability for Curtis' injuries. In its decision, the court noted:

"* * * The court will comment that there is no question but [t]hat a safety type of glass, had it been installed, would have greatly reduced if not eliminated, the extent of injuries suffered by the plaintiff."

The court's gratuitous statement is not, however, dispositive of the issue of proximate cause. A great deal of factual conflict exists in the record as to whether Curtis' contact with the doors was unavoidable, or a diversion, consisting of a jumping kick-turn off the glass door's push-bar type door handle. It was not necessary for the trial court to decide the issues raised by the university's affirmative defenses.

We find that the judgment is not against the manifest weight of the evidence, as competent, credible evidence in the record supports the judgment of the trial court below.

The first and third assignments of error are overruled.

Curtis argues in his second assignment of error that the trial court failed to render judgment on his second cause of action in nuisance.

Curtis argued below that the university's use of wire-reinforced glass in the French Field House doors constituted both an absolute and qualified nuisance as defined in *Taylor* v. *Cincinnati* (1944), 143 Ohio St. 426 [28 O.O. 369], and as applied in *Rothfuss* v. *Hamilton Masonic Temple Co., supra,* at 180-181 (qualified nuisance).

Our review of the decision below leads us to conclude that the trial court considered, rejected and rendered judgment upon Curtis' cause of action in nuisance.

Even assuming that the assignment of error is well-taken, *i.e.,* assuming that the trial court did not make a specific finding on all issues raised in the

nuisance cause of action, we would find no error. We have reviewed the evidence in the record before us and a finding that the door was a nuisance would have been against the manifest weight of the evidence.

The definition of an absolute nuisance encompasses activities consisting of:

"* * * either a culpable and intentional act resulting in harm, or an act involving culpable and unlawful conduct causing unintentional harm, or a non-culpable act resulting in accidental harm, for which, because of the hazards involved, absolute liability attaches notwithstanding the absence of fault." *Metzger* v. *Pennsylvania, Ohio & Detroit RR. Co.* (1946), 146 Ohio St. 406 [32 O.O. 450], paragraph one of the syllabus; *Interstate Sash & Door Co.* v. *Cleveland* (1947), 148 Ohio St. 325 [35 O.O. 314], paragraph one of the syllabus; cf. *Taylor* v. *Cincinnati, supra,* at paragraph two of the syllabus.

"As distinguished from absolute nuisance, a qualified nuisance or nuisance dependent upon negligence consists of anything lawfully but so negligently or carelessly done or permitted as to create a potential and unreasonable risk of harm, which, in due course, results in injury to another." *Taylor* v. *Cincinnati, supra,* at paragraph three of the syllabus.

Because the trial court found that the university was not negligent, the university could not be found liable for maintaining a qualified nuisance which depends upon a predicate finding of negligence.

Moreover, upon the record and findings below, the door glass is not encompassed within the three general categories set forth in the definition of an absolute nuisance. First, the record does not reflect that the university culpably and intentionally maintained wire-reinforced glass, the consequence of which necessarily results in injury, but, rather, demonstrates the opposite: a policy of stocking, installing, and maintaining safer window materials, the use of which does not necessarily result in injury, even when used in athletic facilities such as French Field House. Second, the trial court specifically found the presence of the wire-reinforced glass to be lawful, not in violation of any pertinent codes and regulations. Finally, the hazards involved in maintaining the glass door are not of the type envisioned by the third category in the definition of absolute nuisance, restated in *Taylor* v. *Cincinnati, supra,* at paragraph two of the syllabus, as: "* * * anything inherently dangerous or likely to do mischief, if it escapes * * *." Such hazards include dangerous combustibles, blasting operations, and wild animals. *Id.* at 435.

Accordingly, the second assignment of error is overruled.

We hold that the trial court did not err by failing to find the university negligent as a matter of law, and its findings and conclusions are supported by competent, credible evidence in the record. Nor did the trial court err by failing to find that the university maintained either a qualified or absolute nuisance. The evidence establishes neither the negligence necessary to find a qualified nuisance nor that the maintenance of the glass door was a harmful act or hazard rising to the level of an absolute nuisance.

The assignments of error are overruled, and the judgment of the trial court is affirmed.

*Judgment affirmed.*

STRAUSBAUGH and VICTOR, JJ., concur.

VICTOR, J., retired, of the Ninth Appellate District, was assigned to active duty under authority of Section 6(C), Article IV, Ohio Constitution.