DECISION.
Plaintiffs-appellants, Robert Neville and Donna Neville, appeal the summary judgment granted by the Hamilton County Court of Common Pleas in favor of the appellees, the city of Wyoming, Ohio ("Wyoming") and the Wyoming Golf Club (the "Club") on the Nevilles' claims for negligence, nuisance, and strict liability. For the following reasons, we affirm the trial court's judgment in part, reverse it in part, and remand the cause for further proceedings.
In October 1999, Robert Neville went to the Club to play a round of golf. As he walked across a grassy area bordering the Club's parking lot, he stepped on a water-meter cover owned by Wyoming. The cover of the meter box moved, causing Robert Neville to fall into the hole where the meter was located. He sustained serious injuries as a result of the fall, and he and his wife, Donna, sued Wyoming and the Club.
Wyoming employees testified that the meter cover was very old and that, sometime prior to Robert Neville's fall, flanges had been added to the cover to secure it on the meter box. This was necessary because the cover had eroded over time. According to meter reader Teresa Hawkins, who read the meter in question near the time of Robert Neville's fall, the flanges kept the cover from moving. Nonetheless, Wyoming employees, including Hawkins, testified that it was not customary for meter readers, who read the meters on a quarterly basis, to ensure that the flanges were in place. An inspection of the meter cover on which Neville fell indicated that the cover no longer had flanges to hold it in place.
David Hermann, the Club's general manager, testified in his deposition that Club employees had opened the meter box in the past and were aware that there were prongs that needed to be placed in a certain manner to secure the cover. Hermann stated that he knew that, if the cover were not carefully placed on the meter box, it would be merely resting on the box. Specifically, he stated, "No, I knew there were prongs on the inside of the lid. I mean, her [counsel for the Nevilles] question was — how it was secured. It wasn't secured on at all, it was sitting on it." But Hermann conceded that the Club had not taken measures to ensure that the cover was properly secured or to post any warnings of the potential dangers.
At the time of his fall, Robert Neville had been a member of the Club for approximately seven years. While he had traversed the grassy strip on numerous occasions, he did not recall ever noticing the meter cover or box. He testified that, on the day of his fall, he did not see the cover prior to sustaining his injuries.
Wyoming and the Club filed motions for summary judgment as to all of the claims, and the trial court granted the motions. In a single assignment of error, the Nevilles now argue that the trial court erred in granting summary judgment.
Pursuant to Civ.R. 56(C), a motion for summary judgment is to be granted only when no genuine issue of material fact remains to be litigated, the moving party is entitled to judgment as a matter of law, and it appears from the evidence that reasonable minds can come to but one conclusion, and, with the evidence construed most strongly in favor of the nonmoving party, that conclusion is adverse to that party.[1]
The party moving for summary judgment bears the initial burden of demonstrating that no genuine issue of material fact exists, and once it has satisfied its burden, the nonmoving party must produce evidence on any issue for which that party would bear the burden of production at trial.[2] This court reviews de novo the granting of summary judgment.[3]
We begin with a discussion of the negligence claim. To establish negligence, the plaintiff must prove that the defendant owed a duty of care, that it breached that duty, and that the breach was the proximate cause of the resulting injury.[4] It is not disputed that the Club owed Robert Neville, an invitee, a duty of ordinary care to maintain its property in a reasonably safe condition so that he was not unreasonably exposed to danger.[5] Additionally, the Club had a duty to warn its invitees of any latent or concealed defects of which it had knowledge.[6]
As we have already described, the Club was on notice, prior to Robert Neville's fall, that, if the prongs were missing or not properly situated, the lid would merely rest on the box. Accordingly, there was a genuine issue of fact concerning the Club's duty to make sure that the cover was secured and in good repair or to warn invitees of the potential danger. The Nevilles presented some evidence that the Club had breached that duty and that the injuries had resulted from the breach. Accordingly, summary judgment was improperly granted on the negligence claim against the Club.
As for Wyoming, the parties agreed that the operation of a water-supply system is a proprietary function[7] and that, in general, municipal corporations are liable for injury caused by the negligent performance of acts by their employees in connection with the operation of such a system.[8] In the case at bar, the Nevilles adduced evidence that Wyoming employees had negligently performed their duties. The evidence demonstrated that a Wyoming employee read the meter quarterly. This required the employee to remove the lid to obtain the reading. The Nevilles thus demonstrated that Wyoming was on notice of the condition of the meter cover. The Nevilles further adduced evidence that Wyoming's failure to ensure that the prongs were in good condition and that the lid was securely in place proximately caused the injuries. Hawkins stated that, although part of a meter reader's duty was to report needed repairs, she did not regularly check the flanges on the meter in question to ensure that it was properly secured.[9] Although Wyoming argues that it believed the meter cover to have been in good condition,[10] there was at least a permissible inference that the flanges had not worn away in the brief interval since the last reading. Moreover, the Nevilles produced evidence that Wyoming's failure to warn of the potential dangers constituted negligence. Therefore, we conclude that there was a genuine issue of fact concerning Wyoming's negligence in failing to detect and replace the missing prongs or to warn of the potential danger.
Nonetheless, Wyoming maintains that it was statutorily immune from liability pursuant to R.C. 2744.03, because the decision not to update the meter-box cover was a discretionary decision. In an action against a political subdivision to recover damages for an injury, the political subdivision is immune if the injury resulted from the "exercise of judgment or discretion in determining whether to acquire, or how to use, equipment * * * unless the judgment or discretion was exercised with malicious purpose, in bad faith, or in a wanton or reckless manner.[11]
First, we cannot say that that Wyoming's decision not to replace the cover was an exercise of discretion that would entitle it to immunity under R.C. 2744.03(A)(5), since the decision in question involved a routine maintenance issue that required little judgment or discretion.[12] In any event, the statute would not excuse Wyoming's allegedly negligent failure to maintain the existing box or to warn of any hidden danger it posed to others. Because such a failure to maintain or warn was the gravamen of the Nevilles' claim, we hold that immunity did not attach.[13]
Wyoming and the Club also argue that, because Robert Neville had frequented the Club numerous times and had even walked on the portion of the grassy area that contained the meter box, he had been placed on notice of the defect, and that his awareness of the defect precluded recovery. We disagree. Robert Neville's deposition testimony indicated that he had never noticed the meter prior to his fall and that he certainly was unaware that the lid was not securely in place on the date in question until he had fallen. Robert Neville's general familiarity with the premises did not provide a basis for the granting of summary judgment in favor of Wyoming and the Club.
We turn now to the Nevilles' other claims, beginning with qualified nuisance. A claim of qualified nuisance is dependent upon demonstrating that something is done lawfully but so negligently or carelessly as to create a potential and unreasonable risk of harm that ultimately results in injury to another.[14] Thus, the Nevilles' claim for qualified nuisance is substantially the same as their negligence claim. Because we have held that genuine issues of material fact remain concerning the negligence claim, we also hold that summary judgment was improper on the qualified-nuisance claim.
By contrast, we hold summary judgment to have been correctly granted on the Nevilles' claim for absolute nuisance. The definition of absolute nuisance encompasses activities consisting of "either a culpable and intentional act resulting in harm, or an act involving culpable and unlawful conduct causing unintentional harm, or a nonculpable act resulting in accidental harm, for which, because of the hazards involved, absolute liability attaches notwithstanding the absence of fault."[15] In the case at bar, the Nevilles failed to adduce any evidence that Wyoming or the Club acted with the degree of culpability necessary to prove an absolute nuisance. They also failed to demonstrate that the operation of the water-supply system, particularly with respect to the operation of the meter in question, was so inherently dangerous that liability would attach without regard to fault. Therefore, we hold that the trial court properly granted summary judgment on the claim for absolute nuisance.
The Nevilles also maintain that strict liability lies because the condition of the meter box and lid was abnormally dangerous. We hold this claim to be subsumed within the portion of the absolute-nuisance claim involving inherently hazardous activities. Having found the absolute-nuisance claim to be without merit, we also hold that summary judgment was proper on the strict-liability claim.
For these reasons, we affirm the portion of the trial court's judgment concerning absolute nuisance and strict liability, but we reverse the judgment with respect to the negligence and qualified-nuisance claims. The cause is hereby remanded to the trial court for further proceedings consistent with this decision and law.
Judgment accordingly.
Painter, P.J., and Doan, J., concur.
Please Note:
The court has recorded its own entry on the date of the release of this Decision.
[1] See State ex rel. Howard v. Ferreri, 70 Ohio St.3d 587, 589,1994-Ohio-130, 639 N.E.2d 1189.
[2] See Wing v. Anchor Media, Ltd. of Texas (1991), 59 Ohio St.3d 108,570 N.E.2d 1095, paragraph three of the syllabus.
[3] Lorain Natl. Bank v. Saratoga Apts. (1989), 61 Ohio App.3d 127,129, 572 N.E.2d 198.
[4] Curtis v. Ohio (1986), 29 Ohio App.3d 297, 299, 504 N.E.2d 1222.
[5] Paschal v. Rite Aid Pharmacy, Inc. (1985), 18 Ohio St.3d 203,480 N.E.2d 474.
[6] Id. at 203-204, 480 N.E.2d 474
[7] R.C. 2744.01(G)(2)(c).
[8] R.C. 2744.02(B)(2). See, also, Hill v. Urbana, 79 Ohio St.3d 130,1997-Ohio-400, 679 N.E.2d 1109, paragraph two of the syllabus.
[9] Hawkins stated that she only stepped on the meter cover after replacing it to check for proper placement.
[10] Hawkins's opinion that the meter in question was "one of the safest on her route" was predicated on the lid being held securely in place by the prongs.
[11] R.C. 2744.03(A)(5).
[12] See Perkins v. Norwood City Schools, 85 Ohio St.3d 191, 193,1999-Ohio-261, 707 N.E.2d 868.
[13] See H. Hafner Sons, Inc. v. Cincinnati Metropolitan SewerDistrict (1997), 118 Ohio App.3d 792, 797, 694 N.E.2d 111.
[14] Curtis, supra, at 301, 504 N.E.2d 1222, citing Taylor v.Cincinnati (1944), 143 Ohio St. 426, 55 N.E.2d 724, paragraph three of the syllabus.
[15] Curtis, supra, at 301, 504 N.E.2d 1222, quoting Metzger v.Pennsylvania, Ohio, Detroit RR. Co. (1946), 146 Ohio St. 406,66 N.E.2d 203, paragraph one of the syllabus.