[Cite as *Buttari v. Norwalk*, 2023-Ohio-4163.]

IN THE COURT OF APPEALS OF OHIO
SIXTH APPELLATE DISTRICT
HURON COUNTY

Sara Buttari

Appellant

v.

City of Norwalk, etc., et al.,

Appellees

Court of Appeals No.  H-23-009

Trial Court No.  CVC 2021 0873

**DECISION AND JUDGMENT**

Decided:  November 17, 2023

* * * * *

Jonathan M. Ashton and Kevin J. Boissoneault, for appellant

Byron S. Choka and Jennifer A. McHugh, for appellees.

* * * * *

**ZMUDA, J.**

## I.  Introduction

{¶ 1} Appellant, Sara Buttari, appeals the judgment of the Huron County Court of

Common Pleas, granting summary judgment in favor of appellees, the city of Norwalk,

Ernsthausen Recreation Center, and Norwalk Park and Recreation, as to appellant's

negligence claims arising out of injuries she sustained while swimming at an outdoor

pool owned and operated by appellees.  Because we find that the trial court properly

concluded that appellees were entitled to political subdivision immunity under R.C. 2744.02, we affirm.

## A. Facts and Procedural Background

{¶ 2} The facts of this case are not in dispute. On July 8, 2020, appellant was swimming at appellees' pool.[1] At some point, appellant decided to exit the pool. As she stepped out of the pool and placed her left foot onto the water overflow grate that surrounded the pool, the grate gave way. Appellant's left leg then sank into the grate area at a depth of approximately 12 inches, causing appellant to suffer injuries including a fractured ankle.

{¶ 3} On November 8, 2021, appellant filed her complaint, in which she alleged that appellees were negligent in maintaining and repairing the "defective water-overflow grate." On December 2, 2021, appellees filed their answer, disclaiming any liability stemming from appellant's injuries and asserting several affirmative defenses including, inter alia, political subdivision immunity. Thereafter, the matter proceeded to discovery, during which the parties deposed Travin Baughman, Brianna Montgomery, Mary Church, and appellant. The transcripts of these depositions were filed with the court and made part of the record.

---

[1] According to appellees' answer filed in this case, the city of Norwalk "owns the property located at 100 Republic Street, Norwalk, Huron County, Ohio, which is known as the Ernsthausen Recreation Center and which is operated by the Norwalk Park & Recreation Department."

2.

{¶ 4} In his deposition, Baughman testified that he was a lifeguard at Ernsthausen Recreation Center on the day that appellant sustained her injuries. When he began his employment with appellees several years earlier, Baughman completed a lifeguard training program, during which he received instruction on how to complete a daily opening checklist and record his completion of the checklist in an internet-based application identified as DigiQuatics. As part of the procedure for opening the pool each day, Baughman inspected the water overflow grates by walking on the grates while visually inspecting them for cracks and listening for any sounds indicative of cracks. Baughman testified that lifeguards completed this procedure every time the pool was opened.

{¶ 5} Over the course of his employment with appellees, Baughman observed cracks in the water overflow grates "two or three times." According to Baughman, when he came across a cracked grate, he would "take it out and replace it with a new one" from a supply of replacement grates that were stored in the lifeguard room. Thereafter, Baughman would record the activity in the DigiQuatics application.

{¶ 6} At the time of appellant's injury, Baughman and two other lifeguards were on duty at the pool, two of whom were stationed at lifeguard chairs and one of whom was responsible for walking the perimeter of the pool. Montgomery was the lifeguard stationed near the area where the incident occurred. Baughman could not recall whether he was stationed at the second lifeguard chair or transitioning to the indoor pool at the

3.

time, but he testified that he did not witness appellant fall through the water overflow grate.

{¶ 7} After appellant fell through the grate, Montgomery alerted the other lifeguards, prompting Baughman to make his way to Montgomery's lifeguard chair. While on his way, Baughman observed the broken grate through which appellant fell. Baughman surmised that the grate had no apparent issues prior to appellant's fall, because "somebody would have replaced it if there was."

{¶ 8} In her deposition, Montgomery corroborated Baughman's testimony concerning the routine procedures associated with opening appellee's outdoor pool using the DigiQuatics application. Relevant here, Montgomery stated that the lifeguards were responsible for "checking grates" every morning for "anything that could possibly cause an injury, like a crack or a little disfigurement in it." She explained that checking the grates involved walking on the grates "to see if there was any give." According to Montgomery, the lifeguards "thoroughly checked" the grates, even bouncing on them to make sure they were stable. Further, the grates were replaced at any sign of damage.

{¶ 9} Midway through her deposition, Montgomery was presented with an "incident/injury report form" that she authored contemporaneously with appellant's injury. In her report, Montgomery asserted that appellant "was getting out of the pool, put [her] foot on [the] grate, and the grate broke." She went on to explain that she was seated in an elevated lifeguard chair near the scene of the incident when she heard the

4.

sound of the grate breaking. She then alerted the other two lifeguards who were on duty by blowing her whistle and made her way to appellant to render first aid.

{¶ 10} Church was the third witness to be deposed in this case. Since August 2012, Church has worked for appellees as the aquatics coordinator who is in charge of the indoor and outdoor pool and staffing related to the pools. Church was not present when the incident involving appellant occurred, having already left the pool premises for the day to pick up her children.

{¶ 11} Church testified that she is responsible for training and orienting new lifeguards. Relevant here, Church testified that new lifeguards receive training in the form of "shadowing shifts prior to being let out on their own. During those shadowing shifts, they're shown by their fellow lifeguards how to read and do the opening and closing duties. The opening duties is what lists how to * * * walk the grates."

{¶ 12} Church went on to explain the inspection process related to the water overflow grates, which involves walking on the grates and feeling for any weakness or give in the grate. Upon discovering any such weakness, further inspection is required to determine whether there are any cracks in the grates. If a crack is discovered and replacement grates are on hand, the lifeguard "would just go get a grate and replace it." If there are no replacement grates available, the lifeguard would communicate with Church so that she could order more. Church stated that, on average, only one or two grates at the outdoor pool needed to be replaced per season.

5.

{¶ 13} After she was informed about appellant's fall, Church directed the lifeguards to retain the broken grate for further inspection. During her deposition, Church indicated that she observed a "weak point that we weren't aware of," which she described as a void in the metal plate on which the water overflow grate rests. The crack in the grate, according to Church, was caused by the lack of support underneath the grate, which was unobservable from above the grate and was not previously known by the lifeguards despite their practice of walking on the grates every morning before opening the pool.

{¶ 14} Appellant was the final witness to be deposed in this case. When asked to describe the incident at issue in this case, appellant responded that she went to the edge of the pool, carrying her son, and placed her son onto the grate. Appellant acknowledged that she did not notice any defect in the grate at the time. She then placed her hands on the grate and proceeded to lift herself out of the pool. When she stood up, her foot went "all the way through" the grate to a depth of about 12 inches. Appellant recalled that lifeguards immediately responded to her, and she testified that Baughman exclaimed, "'Oh, my gosh. These pool grates are supposed to get checked every morning. We must not have checked it.'"

{¶ 15} On November 28, 2022, appellees filed a motion for summary judgment, arguing that they were entitled to immunity from appellant's personal injury claims under Chapter 2744 of the Ohio Revised Code. In support of their assertion of blanket immunity under R.C. 2744.02(A), appellees noted that there was no dispute that they are

6.

political subdivisions and that the maintenance and operation of a recreational swimming pool constitutes a governmental function.

{¶ 16} Moreover, appellees argued that none of the exceptions to immunity under R.C. 2744.02(B) were applicable here. As to the only potentially applicable exception, namely the physical defect exception found in R.C. 2744.02(B)(4), appellees argued that the water overflow grate was not defective at the time of appellant's injury. Appellees also asserted that appellant could not show that they or their employees were negligent since the record contained no evidence of actual or constructive notice of any alleged hazardous condition associated with the grate. Relying upon evidence that the water overflow grates were inspected on a daily basis and were inspected on the day of appellant's injury, appellees insisted that the water overflow grates were not perceivably defective.

{¶ 17} Finally, appellees argued that, even if the physical defect exception was applicable, their immunity would be reinstated under R.C. 2744.03(A)(5) because there was no evidence that appellees' employees acted with malicious purpose, in bad faith, or in a wanton or reckless manner.

{¶ 18} On December 19, 2022, appellant filed her memorandum in opposition to appellees' motion for summary judgment. In her memorandum, appellant argued that appellees were not entitled to political subdivision immunity because the water overflow grate that caused her injury was a physical defect subject to the immunity exception under R.C. 2744.02(B)(4). According to appellant, "the defective grate did not operate as

7.

intended (i.e., safely, without breaking) due to a perceivable condition (i.e., the defective weak point of the grate where Plaintiff stood) because the employees failed to notice the defect during their inspections." Moreover, appellant argued that immunity should not be reinstated under R.C. 2744.03(A)(5), because that section is inapplicable to issues involving the maintenance of a political subdivision's buildings or grounds. Rather, appellant asserted that R.C. 2744.03(A)(5) only applies to political subdivision activities that involve weighing alternatives or making highly discretionary decisions.

{¶ 19} On January 9, 2023, appellees filed their reply, in which they contended that appellant failed to establish any genuine issue of material fact demonstrating that the physical defect exception is applicable in this case. Appellees insisted that appellant failed to demonstrate that her injury was caused by a physical defect on their premises or that any of their employees were negligent. Appellees reasoned that appellant failed to demonstrate that the water overflow grate did not operate as intended due to a perceivable imperfection that impaired its worth or utility. Specifically, appellees argued that the water overflow grate accomplished its purpose of keeping debris from entering the pool's intake system and filter. Further, appellees insisted that the imperfections in the particular grate that failed were not perceivable, as evidenced by the fact that the grate was inspected "on the very morning of the incident" and no imperfections or issues were observed.

{¶ 20} In addition, appellees argued that they would be entitled to immunity even if the physical defect exception applied, because decisions concerning inspections of the

8.

grate systems, the timing and method used for such inspections, and decisions on the use of staff and equipment for such inspections were within the scope of the discretionary decisions referenced in R.C. 2744.03(A)(5). Appellees noted that appellant "made no claim that any such decisions on [appellees'] part were exercised with malicious purpose, in bad faith, or in a wanton or reckless manner," and thus immunity would be reinstated irrespective of the application of the physical defect exception.

{¶ 21} Upon consideration of the parties' arguments and the evidence in the record, the trial court issued its decision on February 24, 2023. In its decision, the trial court found that appellees were political subdivisions entitled to immunity from appellant's claims under R.C. 2744(A).

{¶ 22} Further, the court rejected appellant's argument that such immunity was abrogated under R.C. 2744.02(B)(4), because it found that "there is no evidence to demonstrate negligence on the part of [appellees' or their] employees."[2] The court observed that there was no evidence of any prior injuries associated with the water overflow grate. Further, the court observed that there was no evidence of any actual or constructive notice of any perceivable defect with the grate despite regular inspections including an inspection on the day of appellant's injury.

---

[2] The court indicated that it would not "reach the question of whether there was a 'physical defect' with the grate" in light of its determination that the record lacked any evidence of negligence attributable to appellees or their employees.

{¶ 23} In addition, the trial court found that appellees were entitled to immunity even if the physical defect exception was applicable, because there was "no evidence to suggest that any negligence by [appellees] or [their] employees in the exercise of their judgment or discretion as to the use, placement or care of the grate was done with any malicious purpose, bad faith or in a wanton or reckless manner."

{¶ 24} Based upon the foregoing, the trial court determined that appellees were entitled to immunity under Chapter 2744 of the Ohio Revised Code as to appellant's claims. Therefore, the court granted appellees' motion for summary judgment.

{¶ 25} On March 17, 2023, appellant filed her timely notice of appeal.

## B. Assignment of Error

{¶ 26} On appeal, appellant assigns the following error for our review:

I. The trial court erred when it granted summary judgment in favor of Appellee City of Norwalk d/b/a Ernsthausen Recreation Center a/k/a Norwalk Park & Rec.

## II. Analysis

{¶ 27} In her sole assignment of error, appellant argues that the trial court erred in granting appellees' motion for summary judgment.

{¶ 28} We review the grant or denial of a motion for summary judgment de novo, applying the same standard as the trial court. *Lorain Natl. Bank v. Saratoga Apts.*, 61 Ohio App.3d 127, 129, 572 N.E.2d 198 (9th Dist.1989); *Grafton v. Ohio Edison Co.*, 77 Ohio St.3d 102, 105, 671 N.E.2d 241 (1996). Under Civ.R. 56(C), summary judgment is

10.

appropriate where (1) no genuine issue as to any material fact exists; (2) the moving party is entitled to judgment as a matter of law; and (3) reasonable minds can come to but one conclusion, and viewing the evidence most strongly in favor of the nonmoving party, that conclusion is adverse to the nonmoving party. *Harless v. Willis Day Warehousing Co.*, 54 Ohio St.2d 64, 66, 375 N.E.2d 46 (1978).

{¶ 29} A "material fact" is one which would affect the outcome of the proceeding under the applicable substantive law. *Russell v. Interim Personnel, Inc.*, 135 Ohio App.3d 301, 304, 733 N.E.2d 1186 (6th Dist.1999); *Needham v. Provident Bank*, 110 Ohio App.3d 817, 826, 675 N.E.2d 514 (8th Dist.1996), citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Additionally, "[w]hether a political subdivision or its employee may invoke statutory immunity under R.C. Chapter 2744 generally presents a question of law." *Hoffman v. Gallia Cty. Sheriff's Office*, 2017-Ohio-9192, 103 N.E.3d 1, ¶ 38 (4th Dist.).

{¶ 30} On a motion for summary judgment, the moving party has the burden of demonstrating that no genuine issue of material fact exists. *Dresher v. Burt*, 75 Ohio St.3d 280, 292, 662 N.E.2d 264 (1996). In doing so, the moving party must point to some evidence in the record in the form of "pleadings, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence, and written stipulations of fact, if any, timely filed in the action[.]" Civ.R. 56(C); *Dresher* at 292-293. The burden then shifts to the nonmoving party to provide evidence showing that a

11.

genuine issue of material fact does exist. *Dresher* at 293. The failure to satisfy this reciprocal burden warrants judgment against the nonmoving party. *Id.*

{¶ 31} Here, the trial court found that appellees were entitled to summary judgment because they were immune from suit under the Political Subdivision Tort Liability Act, codified in Chapter 2744 of the Ohio Revised Code. In order to determine whether a political subdivision qualifies for immunity under R.C. Chapter 2744, we apply a "three-tiered analysis." *Smith v. McBride*, 130 Ohio St.3d 51, 2011-Ohio-4674, 955 N.E.2d 954, ¶ 13. First, we must examine whether the political subdivision is entitled to the "general grant of immunity" provided by R.C. 2744.02(A)(1). *Id.* at ¶ 16. This general grant provides statutory immunity to political subdivisions for "damages in a civil action for injury, death, or loss to person or property allegedly caused by any act or omission of the political subdivision or an employee of the political subdivision in connection with a governmental or proprietary function." R.C. 2744.02(A)(1).

{¶ 32} If immunity is found at this initial level, we must proceed to the second tier, under which we examine whether any of the five exceptions to the general grant of political subdivision immunity are applicable under R.C. 2744.02(B). *Id.* at ¶ 14.

{¶ 33} Even if an exception to the general grant of immunity set forth in R.C. 2744.02(A)(1) applies and such immunity is thereby abrogated, our analysis of the immunity question is not complete. Under the third tier of our analysis, we must then examine "whether any defenses in R.C. 2744.03 apply to reinstate immunity." *Id.* at ¶

12.

15, citing *Colbert v. Cleveland*, 99 Ohio St.3d 215, 2003-Ohio-3319, 790 N.E.2d 781, ¶ 9.

{¶ 34} In this case, appellant does not dispute that appellees are entitled to the general grant of immunity under the first tier. Pursuant to R.C. 2744.01(F), a "political subdivision" is defined as "a municipal corporation, township, county, school district, or other body corporate and politic responsible for governmental activities in a geographic area smaller than that of the state." Further, R.C. 2744.01(C)(2)(u)(iv) provides that a "governmental function" includes the "design, construction, reconstruction, renovation, repair, maintenance, and operation of * * * any recreational area or facility, including, but not limited to, * * * [a] bath, swimming pool, pond, water park, wading pool, wave pool, water slide, or other type of aquatic facility." Indeed, the Ohio Supreme Court expressly held that the operation of a municipal pool is a government function. *M.H. v. Cuyahoga Falls,* 134 Ohio St.3d 65, 2012-Ohio-5336, 979 N.E.2d 1261, ¶11.

{¶ 35} Appellant concedes that the city of Norwalk, the Norwalk Park & Recreation Department, and the Ernsthausen Recreation Center are political subdivisions, and their operation of the outdoor pool at which appellant was injured constitutes a governmental function within the definitions set forth above. Thus, appellees are indisputably entitled to the general grant of immunity under R.C. 2744.025(A)(1). Consequently, we proceed to the second tier of our immunity analysis.

{¶ 36} In the second tier of the analysis, we must examine whether any exceptions to immunity are applicable under R.C. 2744.02(B). The only exception appellant relies

13.

upon is the physical defect exception outlined in R.C. 2744.02(B)(4), which provides an exception to statutory immunity for injury, death, or loss to person or property that is "caused by the negligence of [the political subdivision's] employees and that occurs within or on the grounds of, and is due to physical defects within or on the grounds of, buildings that are used in connection with the performance of a governmental function." While the phrase "physical defect" is not defined in the Revised Code, we have construed it as "a perceivable imperfection that diminishes the worth or utility of the object at issue." *Hamrick v. Bryan City Sch. Dist.*, 6th Dist. Williams No. WM-10-014, 2011-Ohio-2572, ¶ 28.

{¶ 37} Construing the statutory language used in R.C. 2744.02(B)(4), we observed in *Hamrick* that the general immunity afforded political subdivisions engaged in a governmental activity under the first tier of the immunity analysis is only abrogated under the second tier "if an injury is: 1) caused by employee negligence, 2) on the grounds or in buildings used in connection [with] that governmental activity, and 3) due to physical defects on or within those grounds or buildings. All of these characteristics must be present." *Id.* at ¶ 25; *see also Doe v. Greenville City Schools*, --- Ohio St.3d ----, 2022-Ohio-4618, --- N.E.3d ----, ¶ 27 ("R.C. 2744.02(B)(4) requires that two separate elements be met—the injuries at issue must be caused both (1) by a political subdivision's employee's negligence and (2) by a physical defect 'within or on the grounds of, buildings that are used in connection with the performance of a governmental function.'").

14.

**{¶ 38}** "Ohio cases addressing the 'physical defect' exception in general involve physical defects as part of the structure of buildings and the maintenance of those structures." *Douglas v. Columbus City Schools Bd. of Ed.*, 2020-Ohio-1133, 152 N.E.3d 1245, ¶ 25 (10th Dist.). Additionally, "Ohio courts have expanded the definition of 'physical defect' to include equipment that did not operate as intended due to a perceivable condition." *Jacobs v. Oakwood*, 8th Dist. Cuyahoga No. 103830, 2016-Ohio-5327, ¶ 26.

**{¶ 39}** In its decision on summary judgment, the trial court determined that the record lacked any evidence of negligence on the part of appellees' employees. Based upon that determination, the trial court did not pass upon whether the water overflow grate through which appellant fell constituted a physical defect. In her brief, appellant argues that the trial court erred in determining that there was no evidence of employee negligence and contends that the water overflow grate was defective.

**{¶ 40}** In response, appellees argue that there was no evidence of negligence on the part of their employees, since the record contains no evidence that any employees knew or reasonably could have known of the weakness in the water overflow grate. Moreover, appellees argue that the grate itself was not a "physical defect" under R.C. 2744.02(B)(4).

**{¶ 41}** As to the issue of negligence on the part of appellees' employees, we agree with the trial court that there is no evidence in the record of such negligence. In order to establish employee negligence, appellant must show the existence of a duty, a breach of

15.

that duty, and an injury proximately resulting from the breach. *Rosenbrook v. Lucas Cty. Bd. of Commrs.*, 2015-Ohio-1793, 33 N.E.3d 562, ¶ 20 (6th Dist.), citing *Texler v. D.O. Summers Cleaners & Shirt Laundry Co.*, 81 Ohio St.3d 677, 680, 693 N.E.2d 271 (1998). "The failure to prove any element is fatal to a negligence claim." *Id.*, citing *Whiting v. Ohio Dept. of Mental Health*, 141 Ohio App.3d 198, 202, 750 N.E.2d 644 (10th Dist.2001).

{¶ 42} The existence of a duty is a question of law, but the breach of that duty is "normally a question for the jury." *Nageotte v. Cafaro Co.*, 160 Ohio App.3d 702, 2005-Ohio-2098, 828 N.E.2d 683, ¶ 37 (6th Dist.); *see also Briere v. Lathrop Co.*, 22 Ohio St.2d 166, 172, 258 N.E.2d 597 (1970) (stating that "the specific acts necessary to fulfill [a] duty, as well as the inferences and conclusions to be drawn from the evidence, were jury questions"). "Only when the material facts are undisputed and admit of no rational inference but negligence or want of due care does the issue become a question of law." *Tarkany v. Bd. of Trustees of Ohio State Univ.*, 10th Dist. Franklin No. 90AP-1398, 1991 WL 101593, *2 (June 4, 1991), citing *Curtis v. Ohio State Univ.*, 29 Ohio App.3d 297, 299, 504 N.E.2d 1222 (10th Dist.1986).

{¶ 43} As this case arises out a claim for premises liability, appellees' duty to appellant depends upon the relationship between appellees, the owners of the municipal pool, and appellant, the injured party. *Turner v. Cathedral Ministries*, 2015-Ohio-633, 27 N.E.3d 586, ¶ 10 (6th Dist.), citing *Mostyn v. CKE Restaurants, Inc.*, 6th Dist. Williams No. WM–08–018, 2009-Ohio-2934, ¶ 13. "That relationship will fall into one of three

16.

categories: invitee, licensee, or trespasser." *Id.* Here, appellant's relationship to appellees is that of an invitee.

{¶ 44} A property owner must exercise ordinary care and protect the invitee by maintaining the premises in a safe condition. *Light v. Ohio Univ.*, 28 Ohio St.3d 66, 68, 502 N.E.2d 611 (1986), citing *Presley v. Norwood*, 36 Ohio St.2d 29, 31, 303 N.E.2d 81 (1973). Further, the property owner "has the duty to warn invitees of latent or hidden dangers." *Nageotte* at ¶ 26. To discover such dangers, a property owner "has a duty to conduct reasonable inspections." *Tarkany* at *2.

{¶ 45} In its decision granting appellees' motion for summary judgment, the trial court found that appellant could not establish that appellees' employees had actual or constructive knowledge of the weakened state of the water overflow grate at the time of appellant's injury. Relying upon the evidence of the employees' daily inspections of the water overflow grates conducted, the court concluded that there was no evidence that appellees' employees breached a duty to appellant.

{¶ 46} Upon review, we agree with the trial court that the uncontested evidence in the record establishes that the lifeguards responsible for inspecting the water overflow grate system performed such inspections on a daily basis, including on the morning of appellant's injury. The employees faithfully followed the policy established by appellees to discover any issues with the water overflow grates. Thus, there is no evidence that they were negligent in maintaining the premises.

17.

{¶ 47} However, appellant argues that the inspections policy was not adequate and reasonable under the circumstances. This argument presents a subtle shift in focus from the employees to appellees. This shift is inappropriate under the physical defect exception, which requires the establishment of negligence on the part of the municipality's *employees*.

{¶ 48} In short, we find no evidence to establish negligence on the part of appellees' employees. Since this is an element that must be established in order to trigger the physical defect exception, appellant's failure to establish it means that the general grant of immunity as to appellees remains intact. Consequently, summary judgment in favor of appellees was properly granted.

{¶ 49} Additionally, we note that appellant's argument challenging the propriety of the inspection procedure itself would be subject to reinstated immunity under R.C. 2744.03(A)(5), which provides:

> The political subdivision is immune from liability if the injury, death, or loss to person or property resulted from the exercise of judgment or discretion in determining whether to acquire, or how to use, equipment, supplies, materials, personnel, facilities, and other resources unless the judgment or discretion was exercised with malicious purpose, in bad faith, or in a wanton or reckless manner.

{¶ 50} Appellant argues that the foregoing defense is inapplicable here because the defective grate did not arise out of appellees' exercise of judgment or discretion.  In her brief, appellant argues that

> while the installation of the grate system may have been a discretionary decision, the maintenance of the grate is not.  [Appellant's] injuries did not arise from "the exercise of judgment or discretion in determining whether to acquire, or how to use, equipment, supplies, materials, personnel, facilities, and other resources."  Rather, Appellees' employees failed to notice a weak point and/or defect in the grate where [appellant] fell.  This sort of negligent maintenance does not suffice to give rise to the defense enunciated in RC. 2744.03(A)(5).

{¶ 51} Further, in her reply brief, appellant argues that while the decision to install the grating system may have required a high degree of official judgment and discretion, the maintenance or inspection of the grates did not require that same level of discretion and thus R.C. 2744.03(A)(5) is inapplicable.

{¶ 52} "Immunity operates to protect political subdivisions from liability based upon discretionary judgments concerning the allocation of scarce resources; it is not intended to protect conduct which requires very little discretion or independent judgment."  *Hall v. Ft. Frye Local School Dist. Bd. of Edn.*, 111 Ohio App.3d 690, 699, 676 N.E.2d 1241(4th Dist.1996); *see also Addis v. Howell*, 137 Ohio App.3d 54, 60, 738 N.E.2d 37 (2d Dist.2000) ("Some positive exercise of judgment that portrays a

19.

considered adoption of a particular course of conduct in relation to an object to be achieved is required in order to demonstrate an exercise of discretion for which R.C. 2744.03(A)(5) confers immunity from liability on a political subdivision."). "Immunity does not apply to the negligence of employees in 'the details of carrying out the activity even though there is discretion in making choices.'" *McVey v. Cincinnati*, 109 Ohio App.3d 159, 671 N.E.2d 1288 (1st Dist.1995), quoting *Bolding v. Dublin Loc. Sch. Dist.*, 10th Dist. Franklin No. 94APE09-1307, 1995 WL 360227, *3 (June 15, 1995). "Once a decision is made, however, the government entity still can be liable for the negligent implementation of its decision." *Seiler v. Norwalk*, 192 Ohio App.3d 331, 2011-Ohio-548, 949 N.E.2d 63 ¶ 115 (6th Dist.), citing *Enghauser Mfg. Co. v. Eriksson Engineering Ltd.*, 6 Ohio St.3d 31, 32, 451 N.E.2d 228 (1983).

{¶ 53} Appellant's arguments before this court are two-fold. First, appellant argues that appellees' employees negligently inspected the grate system, including the grate through which she fell. As the foregoing authority demonstrates, the defense enunciated in R.C. 2744.03(A)(5) is inapplicable to this first argument, which arises out of the alleged negligence of appellees' employees in carrying out the inspection policy formulated by appellees. However, we have already determined that appellant failed to introduce any evidence of employee negligence in this case, and thus we need not apply R.C. 2744.03(A)(5) to appellant's first argument.

{¶ 54} Second, appellant argues that the inspection procedure established by appellees and followed by appellees' employees was inadequate and unreasonable. This

20.

argument focuses on appellees' policy itself, not the carrying out of the policy by appellees' employees. Assuming, arguendo, that this argument triggers the physical defect exception and thus survives the second tier of the immunity analysis, immunity would nonetheless be reinstated under R.C. 2744.03(A)(5). Appellees' creation of an inspection and maintenance procedure for its employees to follow to ensure safe operation of the water overflow grating system involved an exercise of judgment and high-level discretion as to how to utilize scarce resources. As such, the product of appellees' exercise of judgment and discretion, namely the inspection procedure, is a matter afforded immunity protection under R.C. 2744.03(A)(5). Consequently, we find that appellant's second argument fails as a matter of law.

{¶ 55} In sum, we find that the trial court did not err when it granted summary judgment to appellees, as there are no questions of material fact and appellees are entitled to immunity from suit on appellant's claims. Accordingly, we find appellant's assignment of error not well-taken.

### III. Conclusion

{¶ 56} For the foregoing reasons, the judgment of the Huron County Court of Common Pleas is affirmed. Appellant is ordered to pay the costs of this appeal pursuant to App.R. 24.

Judgment affirmed.

A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. *See also* 6th Dist.Loc.App.R. 4.

Thomas J. Osowik, J.                 _____
                                         JUDGE

Gene A. Zmuda, J.

                                   _____

Myron C. Duhart, P.J.                            JUDGE
CONCUR.

                                   _____
                                         JUDGE

This decision is subject to further editing by the Supreme Court of Ohio's Reporter of Decisions.  Parties interested in viewing the final reported version are advised to visit the Ohio Supreme Court's web site at: http://www.supremecourt.ohio.gov/ROD/docs/.

22.